568          NEBRASKA REPORTS.          [Vol. 32

State, ex rel. Tarr, v. Mayor and Council of Crete.

STATE, EX REL. H. G. H. TARR, V. MAYOR AND COUNCIL OF CRETE.

[FILED JULY 2, 1891.]

1. **Mandamus:** CAPACITY OF RELATOR. A relator in an action for *mandamus* who shows that he has a direct pecuniary interest in the result of the action, may maintain the action, and the petition is not demurrable on the ground of want of capacity to sue.

2. **Cities:** WATER SUPPLY: CONTRACTS. Under sub. XV., sec. 69, chap. 14, Comp. Stats., a city of the second class has authority to make contracts with and authorize any person, company, or corporation to erect and maintain a system of water-works and water supply, etc, for the city, under certain rules and regulations. This, however, is not dependent on the rental of hydrants for the use of the city, that being a mere incident to the contract.

3. ———: ———: TAXATION: LIMIT. The limitation to seven mills on the assessed valuation, "to pay for water furnished such city or village under contract," applies alone to the excess over seven mills, and does not render invalid the contract so far as the city had power to make it.

4. The petition *held* to state a cause of action, and that the relator was entitled to the relief prayed for.

Original application for *mandamus.*

*J. R. Webster*, for relator :

The franchise ordinance is a contract, and is to be interpreted in the light of the surrounding circumstances, and the intent of the parties. (*Singer Mfg. Co. v. Doggett*, 16 Neb., 609, 610; *People v. Gosper*, 3 Id., 310; *Hamilton v. Thrall*, 7 Id., 219; *Horbach v. Miller*, 14 Id., 13; *Tootle v. Elgutter*, Id., 158.) It is too late, after permitting the construction of the works, to say that the franchise is void, merely because the city had contracted beyond its corporate power. (*Miners' Ditch Co. v. Zellerbach*, 37 Cal., 579; *Neb. City v. Gas Co.*, 9 Neb., 347–8; *Clark v. Dayton*, 6 Id., 203–4; *Wiggins v. Mayor*, 9 Paige [N. Y.], 24; *Tash v. Adams*, 10 Cush. [Mass.], 252; *Hellenkamp v. Lafayette*, 30 Ind., 192; *Kellogg v. Ely*, 15 O. St., 64; *Weber v. San Francisco*, 1 Cal., 455; *Lafayette v. Fowler*, 34 Ind., 140; *Sleeper v. Bullen*, 6 Kan., 300; *Motz v. Detroit*, 18 Mich., 495; *Sedam v. Williams*, 4 McLean [U. S.], 51; *Russ v. Wilson*, 22 Me., 207.) The grant of the franchise, being a proper exercise of corporate power, is valid, even though some other provisions of the ordinance are in excess of power. (*State v. Hardy*, 7 Neb., 379.)

*John L. Webster*, and *Chas. Offutt*, for the Crete Improvement and Investment Co., intervenors:

The relator has no capacity to maintain this action. (*Com. v. Canal Com'rs*, 2 Penr. & W. [Pa.], 517; *State v. Kearney*, 25 Neb., 267, and cases; High, Ex. Leg. Rem., secs. 9, 11, and cases; *People v. Masonic Ass'n*, 98 Ill., 635; *State v. Ramsey*, 8 Neb., 286; *Anderson v. Colson*, 1 Id., 172; *State v. Omaha*, 14 Id., 265; *People v. Forquer*, Breese [Ill.], 104; *Union Church v. Sanders*, 1 Houston [Del.], 100; *People v. Johnson*, 100 Ill., 537; *Loomis v. Rogers Twp.*, 53 Mich., 136; *Board of Police v. Grant*,

570      NEBRASKA REPORTS.      [Vol. 32

S ate, ex rel. Tarr, v. Mayor and Council of Crete.

9 S. & M. [Miss.], 77; Morawetz, Priv. Corp., sec. 215; *Tarver v. Com'rs*, 17 Ala., 527; *Peck v. Booth*, 42 Conn., 271; *People v. Salomon*, 46 Ill., 415; *People v. Mayor*, 51 Id., 17; *People v. Glann*, 70 Id., 232; *State v. Cerron*, 29 La. Ann., 848; *People v. Auditor Gen'l*, 36 Mich., 271; *People · v. Supervisors*, 36 Id., 377; *People v. Supervisors*, 64 N. Y., 600; *People v. Hayt*, 66 Id., 606; *Dutten v. Hanover*, 42 O. St., 215; *Com. · v. Mitchell*, 82 Pa. St., 343; *Ex parte Barnwell*, 8 S. Car., 264; *Cook v. Treasurer*, 50 Vt., 231; *State v. Supervisors*, 2 Chand. [Wis.], 250.) The matter now in controversy is the validity of the contract made by the city of Crete with Johnston & Stevens, and that is not within the power of this court to decide on such an application. (*Kendall v. U. S.*, 12 Pet. [U. S.], 613; *People v. Dulaney*, 96 Ill., 503; *State v. Co. of Howard*, 39 Mo., 375; *State v. Zanesville T. Co.*, 16 O. St. 308; *Benson v. Paull*, 6 El. & B. [Eng.], 273; *State v. Bridge Co.*, 20 Kan., 404; *Bailey v. Oviatt*, 46 Vt., 627; *Parrott v. Bridgeport*, 44 Conn.,180; 2 Dillon, Mun. Corp., sec. 935; *State v. Douglas Co.*, 18 Neb., 506.) This application is not made in good faith for a writ of *mandamus.* The fact that a court of chancery has acquired jurisdiction of the subject-matter of the application will constitute a bar to this application. (*Queen v. Pitt*, 10 Ad. & E. [Eng.], 272; *People v. Warfield*, 160 Ill., 530; *People v. Wiant*, 48 Id., 268; *People v. Chicago*, 53 Id., 424; *Hardcastle v. R. Co.*, 32 Md., 32; *State v. Jennings*, 56 Wis., 113.)

*G. M. Lambertson*, for the mayor and council of Crete.

The franchise granted to Johnston & Stevens under the ordinance of September 8, 1888, is void. (*Gale v. Kalamazoo*, 23 Mich., 344; *Garrison v. Chicago*, 7 Biss. [U. S.], 487; 2 Dillon, Corp., sec. 131; *State v. Gas Light & Coke Co.*, 18 O. St., 262; *Presbyterian Church v. New York*, 5 Cow. [N. Y.], 538; *Coats v. Mayor*, 7 Id., 585.)

The agreement to pay rent for said hydrants at the rate of $3,000 per annum is *ultra vires,* and void. (*Reineman v. R. Co.,* 7 Neb., 314; *State v. Babcock,* 24 Id., 642; *Dixon Co. v. Field,* 111 U. S., 83.) Again, this clause of the contract is void because it provides for the payment of money annually in excess and in advance of any appropriation made, or to be made, by the city. (*Pullman v. New York,* 49 Barb. [N. Y.], 57; *Bladen v. Philadelphia,* 60 Pa. St., 464; *Phil. v. Flanagen,* 47 Id., 22; *Jonas v. Cincinnati,* 18 O., 318; *McSpedon v. Mayor,* 7 Bosw. [N. Y.], 601; *Blair v. Lantry,* 21 Neb., 258.) Sec. 12 of said ordinance, pledging the revenues of the city to pay interest on bonds to the extent of hydrant rentals, amounting to at least $3,000 per year, is *ultra vires.* The transfer of the franchise by Johnston & Stevens, before the completion of the water-works, worked a forfeiture of the privileges conferred. (Morawetz, Corp., secs. 923, 924, 944; *Milhau v. Sharp,* 27 N. Y., 619.)

MAXWELL, J.

This is an application for a *mandamus* against the defendants. It is alleged in the petition that "the plaintiff, Horace G. H. Tarr, a citizen and resident of the city of New York, in the state of New York, complains of the defendants, and for cause of action says, the city of Crete is and was on the 8th day of September, 1888, an incorporated municipality, in the county of Saline and state of Nebraska, duly incorporated under the laws of the state of Nebraska, for the incorporation of cities of the second class, and villages having more than one thousand inhabitants. And Luther Norris is mayor of the city of Crete, and Moses E. Haight and C. P. Hovey are councilmen of the First ward of said city, John Harrington and Jacob Shimoneck are councilmen of the Second ward of said city, and Joseph S. Muff and Jacob Bahner are council-

572        NEBRASKA REPORTS.        [Vol. 32

State, ex rel. Tarr, v. Mayor and Council of Crete.

men of the Third ward of said city of Crete.   And said mayor and councilmen are duly elected, qualified, and acting.

"2. On the 8th day of September, 1888, the mayor and council of the city of Crete, in accordance with the provisions of the law for its organization, duly passed a certain ordinance, known as ordinance number 120, entitled 'An ordinance providing for the supplying of the city of Crete, Nebraska, and its inhabitants with water for public and private purposes, and granting to John R. Johnston and Geo. D. Stevens, of Crete, Nebraska, the franchise and license to construct and operate a system of water-works in the city of Crete; contracting with the said John R. Johnston and Geo. D. Stevens for the rental of fire hydrants for supplying the city of Crete, Nebraska, with water, and providing for the method of purchase of the same by said city.'

"3. In and by said ordinance it was provided as follows: 'The privilege is hereby granted to John R. Johnston and Geo. D. Stevens, of Crete, Nebraska, their successors and assigns, for and during the term of twenty-five years, to erect, construct, maintain, and operate a system of water-works in the city of Crete, Nebraska, for supplying said city and the inhabitants thereof with water for public and private purposes.' The said system of water-works was to consist of a direct and reservoir pressure system, the water to be taken from a well or a system of wells. The grantees were required to provide a neat and substantial engine house of brick, with cut stone trimmings, and slate or metal roof, of sufficient size for coal, boiler, and pumping engine room, neatly furnished inside and out, and equipped with a suitable engine or engines, with a capacity of not less than one million gallons each twenty-four hours, with steam boiler or boilers of sufficient size to run said pumps to their full capacity, and to be well protected in severe weather. The system to have and to be

what is termed a reservoir system, with a distributing or supply reservoir, having an altitude of not less than 155 feet above low water mark of the Blue river. Pipes and reservoir to be located as shown by a plan accompanying said ordinance and franchise to the said grantees. The reservoir to be substantially built with suitable puddled base and sides, and lined with substantial masonry or asphaltic preparation, and provided with all necessary gate valves and drainage facilities for periodical cleaning, and to have a capacity of not less than one million gallons, and so built as to be readily enlarged. In section 6 of said ordinance, termed 'the original pipe system,' as shown upon a plan in said ordinance, termed the accompanying plan, in which the grantees were to furnish and lay not less than 23,020 feet of cast iron pipe. The principal mains to be not less than ten inches in diameter, and the laterals of eight, six, and four inches, and to furnish and connect the same to fifty two-and-one-half-inch double fire hydrants of improved pattern, with all necessary valves, valve-boxes, and special castings required to complete the work, with connections sufficient in size and capacity to supply two lines of two and one-half inch hose from the same hydrant. The pipe and pipe-lines shall be of sufficient strength to withstand a hydrostatic pressure of one hundred and twenty-five pounds to the square inch after being laid. The said pipe lines to be laid on the north side of streets running east and west, and on the east side of streets running north and south, and in all cases below the frost line, the location of said pipe line to be according to accompanying plan.

"By section 8 of said ordinance it was provided, 'In consideration of the benefits which will be derived by the city of Crete, and the inhabitants thereof, from the construction and operation of said water-works, and in the further consideration of the water supply hereby secured for the public use, and as an inducement for the grantees to enter

upon the construction of said water-works, the privilege hereby granted to and vested in John R. Johnston and Geo. D. Stevens, their successors or assigns, shall be and remain in full force and effect for and during the term of twenty-five years, subject to the right of purchase at the end of that time as hereinafter provided, and for the same consideration, and as the inducement, the city of Crete hereby rents of the grantees for the use hereinafter mentioned the fifty hydrants hereinbefore provided for and during the term of twenty-five years from the acceptance of said works. And the said city agrees to use the said hydrants on said pipe line for the extinguishment of fires and flushing only, except as hereinafter provided, and to make good to the grantees any injury which may happen to them when used by any officer of its fire department in the line of his duty. And the city fire department shall have the right to use any of the hydrants twice in each month for drill practice for a period not exceeding one hour at each drill, and the said city hereby agrees and promises to pay rent for the said fifty hydrants at the rate of $3,000 per annum for said term of twenty-five years, which rent the said city of Crete hereby promises to pay in semi-annual installments, on the first days of January and July of each and every year during the continuance of privilege herein granted. The grantees shall constantly, day and night (except in case of unavoidable accident), keep all fire hydrants supplied with water for instant service, and shall keep them in good order and efficiency.'

"It was further by said ordinance provided, under terms and conditions therein named, that the city could require extensions to be constructed, and that the city should have the free use of water from hydrants for flushing public gutters and sewers for sanitary purposes, for all public offices and public schools, and for such benevolent and charitable institutions as may from time to time be established in said city, for public parks, and for four public drinking

fountains for man and beast, flowing 100 gallons of water
each per hour, and for one public sprinkling wagon; said
fountains, however, to be erected by the city at its own
expense. And the grantees were to furnish to the citizens
of said city, water according to rates not to exceed rates in
said ordinance established, and it was provided that the
city council should have the right, prior to the construc-
tion of the work, to change location of mains, hydrants,
and pipes from that shown on said accompanying plan.

"5. By section 11 of said ordinance it was provided
'At the expiration of twenty-five years, the city of Crete
shall have the option to purchase and own the said water-
works and pipe system as a whole upon the following con-
ditions, and the said grantees, in accepting this ordinance,
expressly covenant to sell and convey to the city of Crete
the said water-works and pipe system as a whole on the
said conditions and upon a value to be determined by ap-
praisers, the appointment of which was therein regulated.
And it was provided that when purchase by the city was
made the franchise granted to John R. Johnston and Geo.
D. Stevens shall be terminated.' In section 13 of said
ordinance it was provided 'The grantees shall commence
active operations on said water-works within ten days from
the passage of this ordinance and complete the same on or
before September 1, 1889, unless from causes beyond the
control of said grantees, such as strikes, riots, failure of
manufacturers to produce material and railroad to deliver
the same, in which event the time so lost shall be extended.
Said grantees shall use all possible diligence to complete
said works within the time specified.' It was further pro-
vided in said section 13 that 'On the completion of the
water-works in compliance with the requirements of this
ordinance, the grantees shall successfully subject the entire
pipe system and hydrants thereon, under the supervision
of the council of said city, to a pressure of 125 pounds to
the square inch, and shall also test the power and capacity

of the said water-works, in which test they shall throw water through 150 feet of hose attached to each hydrant, with a one-inch nozzle, seventy-five feet high, from four hydrants at the same time, in the business district of the city; and also they shall throw at another time through 200 feet of hose sixty-five feet high, attached to each hydrant with a one-inch nozzle, four effective fire streams, from four hydrants at the same time, in the resident district of the city. In the said test two streams only shall be taken from one line. Upon the completion of said work, and the said tests having been made as aforesaid to the satisfaction of said council, the said city, by its council, agrees to accept such water-works forthwith, and from the date of such acceptance the hydrant rentals hereinbefore provided for shall begin.'

"Section 14 of said ordinance provides, ' This ordinance shall become binding upon the city of Crete in the event that the grantees shall, within ten days from the passage and publication of this ordinance, file with the city clerk of the city of Crete their written acceptance of the terms and conditions of this ordinance, the same to be accompanied with a good and sufficient bond in the sum of $1,000, payable to the city of Crete, conditioned for the faithful performance of this contract, in time and manner herein stated; said acceptance shall constitute the contract, and shall be the measure of the rights and liabilities of the city of Crete, and of the grantees, their successors or assigns, during the existence of the contract for hydrant rentals'; and by section 15 it was provided, 'That in case of the refusal or neglect of the grantees, or their successors or assigns, to comply with the provisions and requirements of this ordinance, to keep such system of water-works in good order and repair and ready for immediate and constant use in accordance with the requirements of this ordinance, a reasonable time being given for repairs in case of accidents, all the rights, privileges, and immunities granted by the

State, ex rel. Tarr, v. Mayor and Council of Crete.

said city of Crete shall be forfeited and the said city of Crete shall thereby become vested with the ownership, possession, control, and management of said water-works and property thereto or connected therewith, subject to the payment of a just compensation therefor, to be ascertained as herein provided; that nothing shall be paid or allowed for the unexpired franchise."

"Said John R. Johnston and Geo. D. Stevens, within the time limited, duly filed their bond to the city of Crete, which was approved before the 29th day of April, 1889 ; the said Johnston and Stevens assigned their said franchise to the Crete Improvement and Investment Company, a corporation of the state of Nebraska, organized for the purpose, amongst other things, to own and operate a system of water-works at Crete, Nebraska; and on the 29th day of April, 1889, said Crete Improvement and Investment Company, being in negotiation with one Willard Kent, for the construction of a system of water-works, under said ordinance, at a meeting of its board of directors duly held, received from said Willard Kent a written proposition, which was in the words and figures following :

"' CRETE, NEB., April 29, 1889.

"' *Crete Improvement and Investment Co.*—GENTLEMEN : I will construct in your city a good and efficient system of water-works, consisting of $4\frac{36}{100}$ miles of cast iron pipe; one brick pumping station, with one brick stack, to contain one Worthington duplex high pressure pump capable of pumping one million gallons of water in twenty-four hours; one steam boiler of suitable capacity, a pump room, boiler room, and coal bunker, and all necessary gauges and fittings; a sufficient number of wells, not to exceed thirty; fifty fire hydrants with four-inch connection, and two two-and-one-half-inch nozzles ; all necessary gates and specials, and a storage reservoir of one million gallons capacity, all for the sum of fifty-five thousand dollars, payments to be made as follows : $20,000 upon

39

578          NEBRASKA REPORTS.     [VOL. 32

State, ex rel. Tarr, v. Mayor and Council of Crete.

the arrival of the material upon the grounds, $10,000 thirty days thereafter, and $25,000 on the acceptance of the works.

"'Respectfully,        ,        WILLARD KENT.'

"And on the same day the said Crete Improvement and Investment Company contracted with the said Kent for the construction of such water-works, and the action of the board of directors in that respect was in the words and figures following:

"'CRETE, NEB., April 29, 1889.

"'Meeting of the directors of the Crete Improvement and Investment Company held this day. Present, John R. Johnston, Amos Sherman, F. A. Hobbs, W. H. Barstow, and Geo. D. Stevens.

"'Proposition of Willard Kent, of Woonsocket, R. I., for construction of water-works for the sum of fifty-five thousand dollars received and discussed. On motion Mr. Kent's proposition was accepted, and payments for the same to be made as follows: Twenty thousand dollars when all the material is on the ground; ten thousand dollars thirty days thereafter, and twenty-five thousand dollars when works are accepted and found to stand the tests imposed by the council of the city of Crete.

"'GEO. D. STEVENS, Sec'y.'

"And the said Willard Kent entered upon the execution of said contract on his part, and the same was fully performed within the time limited by said ordinance for the construction of said system of water-works, and in all respects in strict compliance with said ordinance and the plan accompanying the same, except as hereinafter stated.

"5. In the construction of said water-works the said John R. Johnston, being president of the Crete Improvement and Investment Company, requested said Willard Kent to line the reservoir with a preparation of cement and sand, and the reservoir being in large part an embankment of new earth, was not a suitable lining, and by the action

of the weather in the winter thereafter, and the settlement
of the embankment, the reservoir lining was broken to
pieces and destroyed.    But the failure of the reservoir lin-
ing in no respect rendered the works inefficient, and the
same was capable of being restored in a proper manner, and
in accordance with the terms of said ordinance, without
impairing the efficiency of said works, and without any
necessity to suspend the operation of the works, and the
maintaining of a constant system of water supply.    So
that the failure of said Kent to make the lining as required
by said ordinance was not a serious or substantial breach
of its conditions and requirements.    Also, in the construc-
tion of the said system of water-works there was a further
divergence from the original plan, in this: that in the plan
accompanying said ordinance the city of Crete had located
a four-inch water main on Western avenue in the city of
Crete, from Nineteenth to Twentieth streets, a distance of
about 350 feet, with a fire hydrant at the southwest corner
of Western avenue and Twentieth street, and the said John
R. Johnston, being owner and residing upon a tract of
ground bordering upon the city limits of the city of Crete,
to the east of Boswell avenue and north of Thirteenth
street, desired a line of water main laid on Boswell avenue
from Thirteenth to Fourteenth streets, and at his instance
and order, he being president as aforesaid of the Crete Im-
provement and Investment Company, the line of pipe
from Nineteenth to Twentieth streets on Western avenue
was not laid, and the hydrant at the corner of Twentieth
and Western avenue was not set, but in lieu thereof the
same amount of pipe was laid along Boswell avenue from
Thirteenth to Fourteenth streets, and the fire hydrant was
set at the corner of Fourteenth street and Boswell avenue,
which is a boundary street of said city, and the hydrant
was set, at instance of said Johnston, on the east side of
Boswell avenue, just outside of the city boundary.    In no
other respects than above stated did the works as con-

structed differ from the plan adopted by the city council as shown and indicated in the plan accompanying said ordinance. During the construction of the work the city authorities had full and actual notice thereof, and made no objection to the change and location of said piece of pipe, and the said piece of pipe laid was as commodious to the public, and the said fire hydrant was located to protect more property in value, than if located as before originally directed, and the relator alleges that the city authorities, having permitted said change without objection, must be held to have consented thereto, and are estopped to complain thereof, and that the said change of location is no ground of complaint, wherefore the city should not test the works and accept the same.

"The said Willard Kent, in executing said contract, obtained assistance from the relator H. G. H. Tarr, in money and material and credit, so that, when the works were complete, the said Willard Kent was owing the relator, a very large sum of money, and the relator was moreover obligated to various manufacturers and material-men for a large amount of money as surety of said Willard Kent, which the said Kent was unable to pay. And the Crete Improvement and Investment Company failed to pay any part of the money it had so contracted to pay, and has never paid on said works of construction any sum whatever. And soon after the completion of said works, and on or about the 25th day of January, 1890, the said Crete Improvement and Investment Company commenced an action against the said Willard Kent, the general scope and purport whereof was to require the removal of all works by him constructed, from the property of the Crete Improvement and Investment Company, alleging that no part of the construction of the said Willard Kent were of any value or service whatever; that the water mains were light and incapable of standing the requisite pressure; that the wells would not yield the required

amount of water ; that the pump was incapable of deliv-
ering from the wells to the reservoir a sufficient amount of
water, and, in brief, that all and everything of the material
and work was utterly worthless and valueless, but said
charges made by the Crete Improvement and Investment
Company were wholly scandalous and wholly untrue, and
were made by the said company for the reason that it had
no money or means from which it could pay the said Will-
ard Kent for its construction.    The said Willard Kent, to
secure him from his expenditures, which amounted to more
than $45,000 in actual cost, and for which the Crete Im-
provement and Investment Company had agreed to pay the
sum of $55,000, duly made and filed in the office of the reg-
ister of deeds of the county of Saline, his mechanic's lien
claiming a lien upon said water-works and franchise, and
upon the grounds upon which the reservoir and pump-
house were located ; also one Shickle, Harrison & Howard
Iron Company, who had furnished the iron for the con-
struction of said water-works, filed their mechanic's lien
and brought suit of foreclosure thereon, and the same was
pending upon such foreclosure.

"During the pendency of said suits, and before the same
or either of them were tried, on the 28th day of April,
1890, there was negotiated as a compromise of the pending
litigation, a sale of the franchise granted by the city of
Crete to Johnston and Stevens as parties of the first part,
and the relators as parties of the second part, a contract of
sale of the said franchise granted by the city of Crete to
the relators, a copy of which is hereto annexed, and thereby
the relators became the equitable owners, subject to pay-
ment of the purchase money of the said franchise, and of
the grounds upon which the works were located.    Since
the making of said agreement the city of Crete has raised
a question whether or not the franchise so granted by the
city of Crete to Johnston and Stevens is valid, and refuses
in any respect to recognize the same as valid or obligatory

upon said city, and in consequence thereof, the considera-
tion for said franchise has not yet been paid, and Johnston
and Stevens, or the Crete Improvement and Investment
Company, are the holders of the legal title to said franchise
and grounds subject to claim for purchase money, and have
been notified of the pendency of this proceedings.

"On the completion of said works, the 9th day of No-
vember, 1889, the said Willard Kent reported to the
mayor and council of the city of Crete the completion of
said works, and requested a test to be made under the pro-
visions of the ordinance, but they neglected and refused to
do so.

"On the 31st day of December, 1889, the mayor and
council of the city of Crete extended the time for the com-
pletion of said water-works, and their order in that re-
spect is entered of record in the minutes of their journal,
which is as follows : 'In the matter of water-works, Messrs.
Johnston and Stevens made explanatory remarks upon
the tardiness of the completion of the system of water-
works, showing that they were not the party at fault; the
council was in favor of being lenient with Johnston and
Stevens; they promised to have the water-works in good
shape as soon as possible.'

"And afterward, and on the 9th day of January, 1890,
the mayor and council extended the time for the comple-
tion of said works to the 1st day of June, 1890, and the
proceedings of the mayor and council in that regard are
shown by their minutes to be as follows : 'A resolution ex-
tending to Johnston and Stevens the time for completion of
the water-works to June 1, 1890, with same conditions as
original contract except as to time, was introduced and
passed by unanimous vote.'

"But a test was made on the 13th day of November,
1889, by J. S. Brown, city engineer of the city of Crete,
and the certificate of said Brown, city engineer, to that
effect, is hereto annexed, and the works were demonstrated

State, ex rel. Tarr, v. Mayor and Council of Crete.

to comply in all respects with the ordinance, except in the reservoir lining before mentioned, at the instance of Willard Kent, but without the order or supervision of the mayor and council of said city, and again on the 7th day of April and 1st of June, 1890, the said Willard Kent made application to the mayor and council of the city of Crete for a test and inspection of said works, and the same has been neglected and refused. Immediately upon the making of the contract for purchase of the franchise these relators entered upon the work in the restoration of the reservoir lining of the water-works, and the same was restored to comply in all respects with the requirements of said ordinance, and in and about the restoration of the reservoir lining and improvements of the reservoir, the relators expended and increased obligations to the amount of about $3,000, so that the construction of the works has cost about $48,000.

"From and after the 25th day of January, 1890, at their sole expense, the relators have kept the reservoir supplied with water and in constant and efficient condition for service. The reservoir being kept supplied with water except during the time the reservoir was being restored, and during that time the pumps were kept in constant service and ready for fire service at any moment, which service was continued and kept up without intermission during the work of restoring the reservoir lining, which occupied about five weeks' time, during all of which time the pumps were kept in constant service, and service by direct pressure was maintained.

"From the 25th day of January up to the present time there have occurred in the city of Crete four fires, three of which were of a serious character, and in each of said fires a volunteer fire department in the city of Crete, which fire department uses the hose and hose cart of the city of Crete, has used the city water-works for the extinguishment of said four fires, and have used it for practice and for sewer

flushing; but this has been done without any authority from the city of Crete, as it claims.   Three of these fires occurred before the 1st of June, 1890, and the hydrants at the first fire were opened by Mr. Cornell, who was then in charge of the water-works as an employe of the relator.

"These allegations as to the use of the water-works, as stated above, are set forth for the purpose of showing that the city of Crete and the citizens thereof have had the use and benefit of the water in the manner indicated, and not for the purpose of showing that the city of Crete has accepted said works.

"On the 2d day of June, 1890, the said Johnston & Stevens and the relators appeared before the mayor and council and urged upon them, as in duty bound, to make a test of said works, and the mayor and council were fully advised that the relators had a right to demand a test of the works.   And thereafter, and on the 16th day of June, 1890, the mayor and council in regular session passed a resolution for the testing of said works in the words and figures following: 'Be it resolved, By the mayor and councilmen of the city of Crete, Nebraska, that a public test of the water-works plant be made as soon as practicable, and that the mayor be instructed to procure a competent hydraulic engineer of established reputation to superintend said test and inspect the water-works plant for and on behalf of the city, and after such test and inspection, the engineer so procured shall submit to the council his report in writing.' Which resolution the mayor and council rescinded the 1st day of July, 1890.   But before test had been made in compliance with said resolution the said council rescinded the same and refused to make a test of the said works; and, as the relators are advised, the only pretext and reason wherefore the mayor and council pursued such an unwarrantable course, is that the city of Crete is a city of the second class, and at the time of the passage of said ordinance the gross assessed value of all taxable property in the city of Crete in

1888 was the sum of $355,416, and its gross assessed valuation of property in 1890 is $285,175, and the mayor and council pretend that said ordinance is invalid because the assessed valuation of property is insufficient, so that a tax of seven mills upon the dollar would not raise the said amount of $3,000 hydrant rentals.   And the defendants therefore claim and pretend that the said franchise is invalid and void, and that they cannot be required to make a test under said ordinance of said works.

"And they further claim and pretend that the franchise is forfeited for the reason that said works were not completed by the time limited in said ordinance, and that the said piece of water main upon Western avenue was not laid as required to be done in the plans accompanying said ordinance, although the mayor and council acquiesced in its being laid on Boswell avenue as before mentioned. And for a further pretense the mayor and council refuse to make an inspection of said works, to-wit, the mayor and council pretend that the 23,020 feet of pipe, provided in section 6 of said ordinance to be laid in the streets of said city, shall be construed to mean that 23,020 feet of cast iron pipe must be laid within the corporate limits of said city. But the relators show that at the time of the passage of said ordinance the lands lying east of said city were a subdivision, and were marked on the unofficial published maps of the city then in circulation, Daugherty's addition to the city of Crete on the north side of Thirteenth street, and College Park addition to city of Crete on the south side of Thirteenth street. But in fact said additions had never been included within the city limits of the city of Crete, and have not been to this time, although the same were known on the maps and in the vicinity as additions to the said city. And on the accompanying plan or map of the proposed system of water-works, the reservoir block was shown to be located, and the pipe-lines shown to be located along Thirteenth street to the eastward about

three fourths of a mile, and the said pipe was laid in all respects as shown on said plan, but the mayor and council claim and pretend that said pipe is not to be counted or included or measured in the 23,020 feet for the reason that it lies without the city boundary, and the foregoing are all the reasons given to the relators, wherefore the test should not be ordered and the work accepted in case they comply with said ordinance.

"And a true photographic copy of said map or original plan, termed in said ordinance 'the accompanying plan,' is hereto annexed.

"And the relator further shows that although said city of Crete has had all use and benefit of said system of water-works as provided in and by said ordinance since the 25th day of January, 1890, as aforesaid, yet said mayor and council not only refuse to test and accept said works as in duty bound, but also omitted and refused to make in their annual appropriation bill any appropriation for the paying of hydrant rentals, or to levy said seven mills tax to raise and provide necessary money to pay the same.

"Wherefore the relators are entirely without remedy, and pray the aid and intervention of the court that a peremptory writ of *mandamus* issue from this honorable court, directed to the mayor and council of the city of Crete, commanding them, within a short day, to be fixed by the court, that they proceed under said ordinance 120 to make a test and inspection of said works, and if in the event the said works be found to comply with said ordinance, that they be commanded to pass a resolution and enter the same formally accepting the said works. And in event that in any minor respect not vital to the efficiency of the works as a whole, the same be found not to answer the tests required by the ordinance, that the relators may, after the defect be ascertained and shown, be permitted, within a reasonable time, to remedy the same and make the said works comply with said ordinance, and that in case such works on being tested

.are found to comply with the requirements of said ordinance, that they proceed without delay to levy and collect a tax of seven mills on all property in the said city subject to taxation for the year 1890, to pay the hydrant rentals as they accrue, and for such other different or further relief as relator is entitled to, and costs."

The ordinance referred to is as follows:

"An ordinance providing for the supplying of the city of Crete, Nebraska, and its inhabitants with water for public and private purposes, and granting to John R. Johnston and Geo. D. Stevens, of Crete, Nebraska, the franchise and license to construct and operate a system of water-works in the city of Crete, contracting with the said John R. Johnston and Geo. D. Stevens for the rental of fire hydrants for supplying the city of Crete, Nebraska, with water, and providing the method of purchase of the same by said city.

"*Be it ordained by the mayor and city council of the city of Crete, Neb.:*

" Section 1. The privilege is hereby granted to John R. Johnston and Geo. D. Stevens, of Crete, Nebraska, their successors and assigns, for and during the term of twenty-five years, to erect, construct, maintain, and operate a system of water-works in the city of Crete, Neb., for supplying said city and the inhabitants thereof with water for public and private purposes.  Wheresoever hereinafter the word grantees is used it is intended to apply to and mean John R. Johnston and Geo. D. Stevens, their successors and assigns.

" Sec. 2. The system of water-works shall consist or be composed of what is known as direct and reservoir pressure.

" Sec. 3. The water so to be supplied and furnished said city, and the inhabitants thereof, shall be taken from a well or system of wells of such size and depth as will furnish an ample supply of pure water for all purposes.

" Sec. 4. The grantees herein named shall provide a neat and substantial engine house of brick, with cut stone trimmings, and slate or metal roof, of sufficient size for coal, boiler and pumping engine room. Said building shall be neatly furnished inside and out, and equipped with a suitable engine or engines with a capacity of not less than one million gallons each twenty-four hours, or such other larger sized engine or engines as the demands of the city may in the future require, with steam boiler or boilers of sufficient size to run said pumps to their full capacity, and to be well protected from severe weather.

" Sec. 5. The system is to be what is termed a reservoir system, with a distributing or supply reservoir having an altitude of not less than 155 feet above low water mark of the Blue river ; such elevation being the height of the ground at the point at which the reservoir is located and as near as may be as located upon the accompanying plan. Such reservoir shall be substantially built with suitable puddled base and sides, and lined with substantial masonry or asphaltic preparation, and provided with all necessary gate valves, and drainage facilities for periodical cleaning. The capacity of such reservoir shall be of not less than 1,000,000 gallons, and shall be so built as to be readily enlarged by additional chambers should such be needed in the future.

" Sec. 6. The grantees shall furnish and lay in the streets of the city not less than 23,020 feet of cast iron pipe, and as much more as may be deemed necessary by them. The principal mains to be not less than 10 inches in diameter, and the laterals of 8, 6 and 4 inches, to furnish and connect the same to fifty $2\frac{1}{2}$ inch double fire hydrants of the improved pattern with all the necessary valves, valve-boxes, and special castings required to complete the work. In case extensions are made to the original pipe system by the grantees and not ordered by the city council, there shall be nothing in this ordinance to

compel said city to locate or accept hydrants on said extensions, as hereinafter provided ; but said city shall have the power at any time to order hydrants placed on such extensions and shall pay for them the same as other hydrants as hereinafter provided ; *And provided further*, Said city of Crete shall have the privilege of setting additional hydrants on the original pipe system as shown on the accompanying plan, said city paying the expense of setting the same and the costs of the hydrants, and no hydrant rental shall at any time be charged for supplying the same with water for fire protection purposes.

" Sec. 7. The grantees herein named shall furnish hydrants and hydrant connection, which shall be sufficient in size and capacity to supply two lines of $2\frac{1}{2}$-inch hose from the same hydrant. The pipe and pipe lines shall be of sufficient strength to withstand a hydrostatic pressure of 125 pounds to the square inch after being laid. Said pipe lines shall be laid on the north side of streets running east and west, and on the east side of streets running north and south, and in all cases below the frost line ; and the said. city agrees to make good any expense to which the grantees may be put if said city shall hereafter lower the grade of any streets where the grade is already established; and in case pipe lines shall be laid where no grade has been established and afterwards a grade shall be established which will necessitate the changing of said pipe line or lines, then said city agrees to make good to said grantees, their successors or assigns, such expense as the changing of said pipe lines may occasion.

"Sec. 8. In consideration of the benefits which will be derived by the city of Crete and the inhabitants thereof, from the construction and operation of said water-works, and in the further consideration of the water supply hereby secured for the public use, and as an inducement for the grantees to enter upon the construction and operation of said water-works, and in the further consideration of the

State, ex rel. Tarr, v. Mayor and Council of Crete.

water supply hereby secured for the public use, and as an inducement for the grantees to enter upon the construction of said water-works, the privilege hereby granted to and vested in John R. Johnston and Geo. D. Stevens, their successors or assigns, shall be and remain in full force and effect for and during the term of twenty-five years, subject to the right of purchase at the end of that time as hereinafter provided; and for the same consideration and as the same inducement the city of Crete hereby rents of the grantees, for the use hereinafter mentioned, the fifty hydrants hereinbefore provided for, and during the term of twenty-five years from the acceptance of said works. And the said city agrees to use the hydrants on said pipe line for the extinguishment of fires and flushing only, except as hereinafter provided, and to make good to the grantees any injury which may happen to them when used by any officer of its fire department in the line of his duty. And the city fire department shall have the right to use any of the hydrants twice in each month for drill practice, for a period not exceeding one hour at each drill; and said city hereby agrees and promises to pay rent for the said fifty hydrants at the rate of $3,000 per annum for said term of twenty-five years, which rent the said city of Crete hereby promises to pay in semi-annual installments, on the first days of January and July of each and every year during the continuance of the privilege herein granted. The grantees shall constantly, day and night (except in case of unavoidable accident), keep all fire hydrants supplied with water for instant service, and shall keep them in good order and efficiency.

"Sec. 9. And the said city of Crete, Nebraska, may from time to time, by ordinance in that behalf enacted, during the term for which this privilege is granted by its council, require the grantees to make such extensions of the pipe system of said water-works, but as a consideration of such extensions the said city in such ordinance shall

order the erection of and shall locate fire hydrants, to be
of the latest approved pattern, upon such extensions at the
rate of not less than one hydrant to every 400 feet of pipe,
and the said city shall pay an annual rental for all such
additional hydrants at the rate of $50 each for the unex-
pired term of twenty-five years from acceptance of said
water-works, and payable, as hereinbefore provided, on the
first days of January and July of each and every year;
but nothing herein contained shall bind the city to pay
rentals on any fire hydrants for a longer term than twenty-
five years from acceptance of said water-works, unless it
shall hereafter extend or renew the contract hereby made;
and the city shall have the right, during the term of the
rental of fire hydrants, to the free use of water for flushing
public gutters and sewers for sanitary purposes, such flush-
ing to be done by the fire marshal or other officer of said
city, through a hose and fire nozzle, after reasonable notice
to grantees; but there shall be no more than one fire hy-
drant used at any one time for such purposes, and no one
hydrant used to exceed thirty minutes per week; *Provided,*
One hydrant may, if deemed necessary, be used in lieu of
all others.    And the said grantees shall furnish water free
of charge during said term of twenty-five years for all
city offices and public schools, and for such benevolent and
charitable institutions as may from time to time be estab-
lished in said city, and also for public parks, and for four
public drinking fountains for man and beast, whenever
such public drinking fountains shall have been located and
erected by the mayor and council of said city with self-
closing valves, the flow of each running not to exceed the
rate of 100 gallons per hour, and for one public sprink-
ling wagon.    All pipe and pipe connections for the above
to be at the expense of the authorities using the same.

"Sec. 10. Said grantees shall furnish water to citizens
residing along the line or contiguous to their line of mains,
at all times after such water-works are completed and

592 NEBRASKA REPORTS. [Vol. 32

State, ex rel. Tarr, v. Mayor and Council of Crete.

ready for use, under such terms and regulations as shall be prescribed by the grantees, their successors or assigns, and as shall be approved by the city council, and said grantees may charge and collect, during the continuance of the privilege herein granted, a tariff of rates to consumers not to exceed the following prices:

"WATER RATES ANNUALLY.

| | | |
|---|---:|---:|
| Dwelling house, 5 rooms or less. | $10 | 00 |
| Each additional room | 1 | 50 |
| Banks, including wash basin | 10 | 00 |
| Bakeries, average | 10 | 00 |
| Barber shops, one chair | 10 | 00 |
| Each additional chair | 5 | 00 |
| Bath house, per tub (public) | 10 | 00 |
| Bath tub (private) | 5 | 00 |
| Blacksmith shop, one fire | 5 | 00 |
| Each additional fire | 2 | 50 |
| Butcher shop | 10 | 00 |
| Billiard bar and drinking saloon | $15 00 to $30 | 00 |
| Breweries, distilleries, rectifiers, and malt houses, estimated at 100 gallons per barrel manufactured, per 1,000 gallons | $0 | 25 |
| Cigar manufactory | 10 | 00 |
| Dray and team horses, each horse | 3 | 00 |
| Candy manufactories | $10 00 to $30 | 00 |
| Dyeing and scouring, including laundries | $15 00 to $40 | 00 |
| Eating saloons | $15 00 to $30 | 00 |
| Fountains flowing not exceeding 6 hours per day during season, $\frac{1}{8}$ inch orifice | $5 | 00 |
| $\frac{3}{16}$ inch orifice | 12 | 00 |
| $\frac{1}{4}$ inch orifice | 25 | 00 |
| $\frac{5}{16}$ inch orifice | 45 | 00 |

"Rates not included in the above may be fixed by the grantees, subject to approval by the city council.

"Said grantees may make such rules and regulations

governing the service of water to consumers as may be proper and expedient in that behalf, and may force the observance of the same, after they have been approved by the city council, by cutting off the supply of water or otherwise, and the said city, by its council, shall adopt ordinances protecting the grantees in the safe and unmolested enjoyment of the privileges hereby granted, and against injury to its property. The grantees shall keep the city of Crete harmless from any liability for damages on account of negligence of the grantees in using streets and public ways of said city in laying, taking up, and repairing mains, hydrants, or other structures or devices for the service of water, and the said grantees shall use proper barricades and lights while its trenches are open, and after using said streets and public ways, shall restore them with due diligence to as near as practicable their former condition. The hydrants, water mains, and pipes shall be substantially as shown on the accompanying plan, and the city council shall have the right to change the location of mains, hydrants, and pipes from that shown on accompanying plan, provided said change shall be made before commencing work on altered lines, and that said change shall not increase the amount of any size pipe in the aggregate.

"Sec. 11. At the expiration of twenty-five years the city of Crete shall have the option to purchase and own the said water-works and pipe system as a whole upon the following conditions, and the grantees, in accepting this ordinance, expressly covenant to sell and convey to the city of Crete the said water-works and pipe system as a whole on the said conditions. The said city, by a resolution of its mayor and council, shall determine to purchase and own the said water-works and shall serve a certified copy of such resolution on the grantees, their successors or assigns, at least six months before the time said privilege and franchise shall expire, by reason of the expiration of the time herein provided for, and in the event that the said

40

city and the grantees shall be unable to agree upon the price, then said city shall have the right to have at once three disinterested appraisers appointed, one to be appointed by the city council, one by the grantees, and the two. thus selected shall choose a third person, who shall be a non-resident and non-taxpayer of the city of Crete and of Saline county, Nebraska, whereupon the three appraisers shall at once proceed to determine the value and price of said water-works and pipe line system, and they, or a majority of them, shall make a written award in duplicate and shall deliver one of such awards to the city clerk of said city and the other to the grantees, and the said city shall thereupon have the right then and there to exercise the option of purchasing or refusing to purchase the said works at the price fixed. If said city shall elect to purchase, it shall give the grantees notice of such election within thirty days from the delivery of such award to the city clerk, and it shall pay the purchase money within three months from the date of such election; but if it shall fail or refuse to purchase, it shall pay the necessary expenses incurred by the grantees about such awards. When such purchase is made by said city the franchise granted to said John R. Johnston and Geo. D. Stevens shall terminate.

"Sec. 12. In the event the grantees shall issue mortgage bonds secured by mortgage or deed of trust upon the water-works, together with the lands, machinery, pipes, outfits, rights, privileges, and franchise, a sufficiency of the hydrant rentals payable by the city of Crete under this ordinance, to discharge the interest upon such bonds as it will mature from time to time, shall from time to time be paid by the city of Crete to the trustee or trustees of such bonds to the extent of $3,000 per annum, when said hydrant rentals are earned by the grantees and are payable by the said city, and such sums shall be so paid while interest on such bonds shall remain due and unpaid. And the city clerk is hereby authorized and instructed to sign a certificate on

the back of said bonds to that effect and to fix the seal of said city to such certificate, and payment so made to said trustee or trustees shall be made exclusively to pay interest upon said bonds so long as the same remains due and payable, and the amount remaining after the interest on said bonds shall have been discharged shall be paid over to said grantees; and in the event the city shall elect to purchase the works as herein provided for, the payment of such bonds, if any there be, shall be assumed by said city, and the face value of such bonds, with accrued interest, if any, shall be deducted from the purchase price of said works, provided that the rate of interest on said bonds shall not exceed six per cent per annum, and that the principal of said bonds, with accrued interest, if any, shall not exceed the purchase price of said works, and that said bonds shall mature at the end of twenty-five years, for which this franchise is granted.

"Sec. 13. The grantees shall commence active operations on said water-works within ten days from the passage of this ordinance and complete the same on or before September 1, 1889, unless from causes beyond the control of said grantees, such as strikes, riots, failure of manufacturers to produce material, and railroads to deliver the same, in which event the time so lost shall be extended. Said grantees shall use all possible diligence to complete said works within the time specified. On the completion of said water-works in compliance with the requirements of this ordinance, the grantees shall successfully subject the entire pipe system and hydrants thereon, under the supervision of the council of said city, to a pressure of 125 pounds to the square inch; and shall also test the power and capacity of the said water-works, in which test they shall throw water through 150 feet of hose, attached to each hydrant with a one-inch nozzle, seventy-five feet high from four hydrants at the same time in the business district of the city; and also they shall throw at another

596     NEBRASKA REPORTS.     [Vol. 32

State, ex rel. Tarr, v. Mayor and Council of Crete.

time, through 200 feet of hose sixty-five feet high, attached to each hydrant with a one-inch nozzle, four effective fire streams from four hydrants at the same time in the resident district of the city. In the said test two streams only shall be taken from one line. Upon the completion of said works, and the said tests having been made as aforesaid to the satisfaction of said council, the said city by its council agrees to accept, such water-works forthwith, and from the date of such acceptance the hydrant rentals hereinbefore provided for shall begin.

"Sec. 14. This ordinance shall become binding upon the city of Crete in the event that the grantees shall within ten days from the passage and publication of this ordinance file with the city clerk of the city of Crete their written acceptance of the terms and conditions of this ordinance, the same to be accompanied with a good and sufficient bond in the sum of $1,000, payable to the city of Crete, conditional for the faithful performance of this contract in time and manner as herein stated. Said acceptance shall constitute the contract and shall be the measure of the rights and liabilities of the city of Crete, and of the grantees, their successors, and assigns, during the existence of the contract for hydrant rentals. The general tax annually assessed, levied, and collected upon all the taxable property on the assessment roll of the city of Crete shall be sufficient, in addition to all the other purposes for which general tax is assessed, levied, and collected from time to time, to meet the payments for all hydrant rentals under this ordinance when they shall respectively be earned and payable during the existence of any contracts for hydrant rentals, and a sufficiency of such general tax so collected shall be annually set apart in money and shall be kept as a separate fund, to be known as the water fund, and shall be irrevocably and exclusively devoted to the hydrant rentals under this ordinance and shall not be otherwise employed.

"Sec. 15. In case of the refusal or neglect of the grantees, or their successors or assigns, to comply with the provisions and requirements of this ordinance to keep such system of water-works in good order and repair and fit for immediate and constant use, in accordance with the requirements of this ordinance, a reasonable time being given for repairs in case of accidents, all the rights, privileges, and immunities granted by the said city of Crete shall be forfeited, and the said city of Crete shall thereby be and become vested with the ownership, possession, control, and management of said water-works and property appertaining thereto or connected therewith, subject to the payment of a just compensation therefor, to be ascertained as herein provided; *Provided*, That nothing shall be paid or allowed for unexpired franchise.

"Sec. 16. All work done under this ordinance to be performed in a good and workmanlike manner, and all material furnished under this ordinance to be first class.

"Sec. 17. The mayor and the city clerk of the city of Crete are hereby authorized and instructed, upon the acceptance of this ordinance, to seal duplicate copies thereof with the seal of the city of Crete, and to sign such copies as such contract in the name and in the behalf of the city of Crete, and to deliver one of the said copies so signed and sealed in behalf of the city of Crete to the grantees, and to accept the other in behalf of the said city, when signed and sealed by the said mayor and city clerk, and to cause such copies, together with such acceptance, to be properly authenticated in accordance with the law governing contracts for the sale of real estate, and to be recorded in the office of the county clerk of Saline county, Nebraska.

"Sec. 18. All ordinances and parts of ordinances inconsistent with this ordinance are hereby repealed, and this ordinance shall take effect and be in force from and after its passage, approval, and publication according to law.

" Passed and approved this 8th day of September, 1888.

"E. D. DAY,

"Attest:                                *Acting Mayor.*

"F. D. WILLIAMS,

" *City Clerk.*"

A plat of the city and the lines of water mains accompany the petition.

The Crete Improvement and Investment Company demur to the petition upon the grounds: First, that the relator has not legal capacity to sue, and second, that the petition does not state a cause of action in which the court has jurisdiction.

The city of Crete and council thereof demur upon the grounds that facts stated in the petition are not sufficient to constitute a cause of action.

If the allegations of the petition are true the relator has furnished a large portion of the means by which the water-works in question were constructed, and he seems to have more interest in the case than any one else, unless it be the city of Crete. It is also alleged that, being a large creditor, he has purchased the works, but the purchase has not been completed because the city of Crete refuses to perform its duty in the premises. If these allegations are true, they are sufficient to entitle the relator to invoke the aid of the court, and the first point in the demurrer is not well taken.

Second—Subdivision XV, sec. 69, ch. 14, Comp. Stats., provides that each city and village may enact ordinances for the following purposes: "To establish, alter, and change the channels of water-courses, and to wall them and cover them over; to establish, make, and regulate wells, cisterns, windmills, aqueducts, and reservoirs of water, and to provide for filling the same. Second—To make contracts with and authorize any person, company, or corporation to erect and maintain a system of water-works and water supply, and to give such contractors the exclusive privilege for a term of twenty-five years; to lay down in

the streets and alleys of said city water mains and supply pipes, and to furnish water to such city or village and the residents thereof, and under such regulations as to price, supply, rent of water-meters, as the council or board of trustees may from time to time prescribe by ordinance for the protection of the city, village, or people. The right to supervise and control such corporation, as above provided, shall not be waived or set aside."

There is a provision that the amount levied for water-works, "or to pay for water furnished such city or village under contract, shall not exceed seven mills on the dollar's valuation," as shown by the assessment rolls. It seems to be contended by the defendants that because the assessed valuation of the city of Crete in the year 1888 was but $355,416, on which a seven-mill tax would produce but $2,487, therefore the entire ordinance, being in excess of the power of the city, is void. We think differently, however; the power is expressly conferred on the city to enter into contract with "any person, company, or corporation to erect and maintain a system of water-works and water supply," etc. This power is not upon condition that the city shall rent a certain number of hydrants, nor, indeed, upon any. Ordinarily, a certain number of hydrants are rented for two purposes : First, as a means of protection of the property of the citizens from fire, and second, as a means of paying the heavy expenses incident to keeping the works in constant operation, and so reducing the expense of water to householders, manufactories, etc.

Had the provision as to the rental of hydrants been entirely omitted from the ordinance, the ordinance, so far as appears, would have been valid, and an agreement to rent more hydrants than the assessed valuation of property in the city will justify, does not affect the validity of the contract for the water-works, although it will diminish the amount to be paid for the fifty hydrants to a sum not exceeding seven mills on the assessed valuation.

600        NEBRASKA REPORTS.        [VOL. 32

State, ex rel. Tarr, v. Mayor and Council of Crete.

Third—Section 5 of the ordinance requires the construction of a reservoir at an altitude not less than 155 feet above the Blue river "as near as may be located on the accompanying plan," evidently referring to the plat now before us. Section 10 provides that hydrants, water-mains, and pipes shall be *substantially as shown on the accompanying plan*, and the city council shall have the right to change the location of mains, hydrants, pipes from that shown on the accompanying plan. It is very evident that the reservoir was intended to be located outside of the city limits, and in fact that it was necessary to do so to obtain the necessary elevation.

The pipe necessary to reach from the city limits proper to this reservoir was a part of the system, and the city council had authority under the statute referred to, to grant a franchise which included the establishment of a reservoir outside of the city limits, and the reservoir and pipes leading to and from the same are under the control and supervision of the city council. (Sub. XV, sec. 69, ch., 14, Comp. Stats.) The evident purpose of this statute is to enable the mayor and council of a city to secure pure water for the residents of the city, and others using the same, so as to protect the health of each and all. The contract to lay 23,020 feet of pipe in the streets of the city must be construed with reference to the amount required to reach the reservoir; that is, the company was to lay 23,020 feet of pipe of certain dimensions, and that amount of pipe has been laid substantially according to the plans accompanying the contract.

It is admitted that about 400 feet of four-inch pipe on Illinois avenue, from Twentieth to Twenty-first street, was not laid, and the hydrant at Twenty-first was not set as provided in the ordinance, but instead thereof the same length and kind of pipe was laid on Boswell avenue from Thirteenth to Fourteenth street. This was done by direction of Johnston, the president of the Crete Improvement

and Investment Company. No objection has ever been made by the city council to this change so far as appears. No property owner along the line of Illinois avenue, nor elsewhere, now complains, nor does the change seem to have been detrimental to any one, and in view of that fact that hydrant, water-mains, and pipes shall be substantially as shown on the accompanying plan, thus indicating an intention not to adhere strictly to such plan, we cannot say that it is a material variance. If, however, the defendants in their answer insist on a literal compliance with the terms of the contract in that regard, the relator must make the change.

Upon the substantial completion of the works it became the duty of the mayor and council, according to the terms of the contract, to test the works, and if they are found then to comply with the terms of the contract, to ratify the same—in effect, accept the works on behalf of the city. This, upon various pretexts, they refuse to do. A city, like an individual, should act in good faith in carrying out its contracts. To construct water-works like those in this case requires a considerable outlay of money. This, in the case at bar, seems to have been borrowed, and the lender and equitable owner asks the city to test the works, and if found to conform to the contract, to approve of the same, and relieve him from the heavy burden of maintaining the works while the city has the benefit of the same, and, in effect, if there are slight defects or slight variances from the terms of the contract, that the same may be corrected, and the works, if when corrected, are found to conform to the terms of the contract, be accepted. This is a reasonable request, and it is the duty of the defendants to make the tests provided for. The petition states a cause of action and the demurrer to the same is overruled, and unless an answer is filed in ten days setting forth facts constituting a defense, a peremptory writ will be issued as prayed.

JUDGMENT ACCORDINGLY.

THE other judges concur.