BOARD OF EDUCATION OF CITY OF HURON, S. D., v. NATIONAL LIFE INS. CO. OF MONTPELIER, VT. SAME v. PEASLEE. SAME v. MONADNOCK SAV. BANK OF EAST JAFFREY, N. H.

(Circuit Court of Appeals, Eighth Circuit. April 3, 1899.)

Nos. 1,118, 1,119, and 1,132.

1. BOARD OF EDUCATION—CORPORATE NATURE—BONDS.

The board of education of the city of Huron, organized under Laws Dak. 1887, c. 47, is a body corporate, separate and independent from the city of Huron, and, in determining whether bonds issued by it increase the corporate indebtedness beyond the prescribed limit, its debts, and not the debts of the city, are to be computed.

2. SAME—LIMITATION OF INDEBTEDNESS.

Comp. Laws Dak. 1887, §§ 1149, 1150, providing that the limit of bonded indebtedness that may be incurred by a city or other municipal corporation shall be based on its assessed valuation for the year preceding the incurring of the indebtedness, do not apply to boards of education created under Laws Dak. 1887, c. 47, which is complete in itself, and restricts the power of boards of education to issue bonds to an amount not exceeding 3 per cent. of their assessed valuation, though it is silent as to what assessment shall be used in the computation.

3. SAME—COMPUTATION OF ASSESSED VALUATION.

Under Laws Dak. 1887, c. 47, restricting the power of boards of education to issue bonds to an amount not exceeding 3 per cent. of their assessed valuation, the computation must be based on the last completed assessment before the bonds were issued.

In Error to the Circuit Court of the United States for the District of South Dakota.

John L. Pyle (Henry C. Hinckley and H. S. Mouser, on brief), for plaintiff in error.

A. B. Kittredge (N. T. Guernsey, on brief in case No. 1,118), for defendants in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge. These are suits which were brought separately by three different holders of coupons detached from municipal bonds which were issued by the board of education of the city of Huron, in the state of South Dakota, the plaintiff in error, hereafter termed the "board of education." The bonds from which the coupons were detached are of the same issue as those that were in-

volved in the case of National Life Ins. Co. of Montpelier v. Board of
Education of City of Huron (decided by this court at May term, 1894)
27 U. S. App. 244, 10 C. C. A. 637, and 62 Fed. 778, and for a full
statement of the facts attending the issuance of the bonds, and the law
under which the board of education acted, we refer to our statement
and opinion in the former case.    The National Life Insurance Com-
pany, Robert J. Peaslee, as assignee of the New Hampshire Trust
Company, and the Monadnock Savings Bank of East Jaffrey, the de-
fendants in error, who were the plaintiffs below in the respective
cases, are confessedly bona fide holders of the coupons on account of
which they respectively sue, having bought the bonds from which
they were detached, in good faith, for value, and prior to maturity.
To the complaints which were filed in the three cases the board of
education filed answers, which were in substance the same, wherein
it pleaded the same defenses, that were adjudged insufficient by this
court in the former suit.    Id.    Demurrers to the several answers
were interposed by the respective plaintiffs, which were sustained,
and final judgments were thereupon entered in favor of the plaintiffs
below.

It is unnecessary to discuss any of the questions which were con-
sidered and decided on the former occasion, and we shall refrain
from doing so, as we have no doubt that the conclusions then an-
nounced were right, and as the facts pleaded in the present cases in
no wise change the point of view from which any of the questions for-
merly considered were decided.    It is claimed, however, on the pres-
ent occasion, and the point must be regarded as new, that the board
of education is not a separate and independent corporation, but a
mere adjunct or department of the corporation known as the "City of
Huron," and that in view of such fact all of the city indebtedness, as
well as the indebtedness of the board of education, should be taken
into account in determining whether the bonds in question, which
aggregated altogether $60,000, being 120 bonds of the denomination
of $500 each, when issued, increased the corporate indebtedness be-
yond the limit allowed by law.    This contention we regard, however,
as untenable.    The board of education appears to have been organized
under and in accordance with chapter 47 of the laws of the then terri-
tory of Dakota for the year 1887.    This act appears in the Compiled
Laws of Dakota of 1887, the most material provisions being found in
sections 1808, 1810–1818, 1820, and 1824 of the Compiled Laws.    With-
out setting out these sections in hæc verba, it will suffice to say that
section 1808 provided that all cities thereafter organized under the
general law for the incorporation of cities, to which class the city
of Huron belongs, should be governed by the provisions of the act;
that section 1810 provided that territory outside of the boundaries
of any organized city or town, but adjacent thereto, might be at-
tached to the city or town for school purposes upon application to the
board of education of such city by a majority of the electors of the
adjacent territory; that section 1811 declared, in substance, that the
organization effected in pursuance of the provisions of the act should
be a "body corporate," and should possess the usual powers of a cor-
poration for public purposes, under the name of the board of educa-

tion of the city or town to which it appertained, and in that name might sue or be sued, and be capable of contracting and being contracted with, and of holding and conveying such real and personal estate as might come into its possession by will or otherwise, or that might be purchased under the provisions of the act. Section 1812 of the act provided, in substance, that the respective boards of education might require the city or town to which they appertained to convey to the board all school property within the limits of such city or town. Section 1814 provided, in substance, that the members of the board should be elected at an annual election, that each ward of the city should be entitled to elect as many members of the board as it had members in the city council, but that no member of the board of education should be a member of the city council, and that no member of the board of education should be a trustee of a town or village to which the board to which he was elected appertained, and that each board of education should have power to fill any vacancy which might occur in its body. Sections 1816 and 1817 provided, in substance, that the board of education should have power to elect its own officers, except the treasurer, and to make its own rules and regulations, and that at a regular meeting of each board, to be held in May of each year, each board should organize by the election of a president and vice president from among its own members, who should hold office for one year until their successors were elected and qualified, and that each board should also elect a clerk, who should hold his office during the pleasure of the board. Section 1818 made it the duty of the president to preside at all meetings of the board, to appoint all committees, and to sign all warrants for money ordered by the board to be drawn upon the treasurer for school moneys. Section 1820 made it the duty of the clerk to keep an accurate journal of the proceedings of the board, to take charge of its books and documents, and countersign all warrants for money which were drawn on the treasurer by order of the board. Section 1824 empowered the board of education to levy a tax for the support of the schools of the corporation for the fiscal year next ensuing, not to exceed in any one year 30 mills on the dollar, which levy, however, was required to be approved by the city council of the city to which the board appertained, when there was one. The clerk of the board was required to certify to the county clerk the amount of the tax levied when it was thus approved, and the county clerk, on receipt of the certificate, was required to place the tax on the tax roll of the county, to be collected by the treasurer of the county as other taxes.

It is manifest, we think, from an inspection of the various provisions of the act under which the board was organized, that it is in fact what section 1811 of the Compiled Laws of Dakota in unmistakable language declares it to be, namely, a "body corporate," or, in other words, a "distinct legal entity," having powers and functions to be exercised separate and apart from the city of Huron. The practice of creating such independent corporations within the territorial limits of other municipal corporations, like cities and towns, for the purpose of placing the control of schools and school property in the hands of persons who are not municipal officers or concerned in the

management of municipal affairs, is quite common, and we have no doubt that the act now in question was passed for that purpose. The claim that the issue of bonds was excessive, in view of the amount of the corporate indebtedness, is founded altogether upon the assumed identity of the two corporations,—that is to say, the city of Huron and the board of education,—and, as the assumption is false, it follows that the issue cannot be deemed excessive for that reason.

It is next insisted in behalf of the board of education that, in determining whether the issue of bonds was excessive, the assessment roll for the year 1889 must be consulted, rather than the assessment for the year 1890. The answer filed by the board of education alleged that the assessed valuation of property within the city of Huron for the year 1889 was $1,575,001, that the assessed valuation for the year 1890 was $3,365,008, and that the equalization of taxes for the year 1890 had been completed by the state board of equalization before the issuance of the bonds in question. The act creating boards of education, under which the plaintiff in error was organized, provided, with respect to issuing bonds for school purposes (vide section 1832, Comp. Laws 1887), that "no corporation shall issue bonds in pursuance of this act in any sum greater than three per cent. of its assessed valuation." In view of the allegation of the answer last mentioned, showing that the assessment for the year 1890 had been completed before the bonds were issued, and the amount of that assessment, it is not denied that they were within the limit of indebtedness fixed by law, if section 1832 is controlling. It is urged, however, by the plaintiff in error, that another section of the Compiled Laws, namely, section 1149, is applicable to the case. This latter section of the Compiled Laws of 1887, and the one following (section 1150), are sections 1, 2, and 3 of an act that was passed by the territorial legislature of Dakota, in the year 1887, with reference to "bonds of municipal corporations," which act was designed, apparently, to set a limit to the bonded indebtedness that might be contracted by a city or other municipal corporation of that kind, to wit, a town or village. It provided, in substance (vide sections 1149, 1150, Comp. Laws Dak. 1887), that the bonded indebtedness of any city or municipal corporation should not exceed 4 per cent. of its assessed valuation, as shown by the returns of the assessor for the year next preceding the time when the indebtedness should be incurred, and that the bonds therein referred to should be issued by the common council or board of trustees of any city or municipal corporation only upon a majority vote of the qualified electors of such city or corporation at an election called for that purpose. The claim is that the phrase "municipal corporation," as used in this act, includes boards of education of the class to which the plaintiff in error belongs, and that when, on October 4, 1890, the board issued the bonds in suit, it should have been governed by the assessment roll of 1889, that being the assessment of the preceding year, rather than by the assessment of 1890, although the latter assessment was completed before the bonds were issued. We entertain a different view. We are of opinion that the act under which the

plaintiff in error was organized is complete in itself; that its powers and duties, as well as the limitations upon its power to issue bonds, are contained in the act under which it became a body corporate; and that, when section 1832 of that act restricted the power of boards of education to issue bonds to an amount not exceeding 3 per cent. of their "assessed valuation," it was intended that the computation should be based on the last completed assessment before the bonds were issued, which in the case at bar was the assessment of 1890. Sections 1149 and 1150 expressly provide that the bonds therein referred to shall be issued by the common councils or boards of trustees of cities or municipal corporations, no reference being made to boards of education, like the plaintiff in error, which are expressly empowered to issue bonds for school purposes in their own name. Vide Comp. Laws 1887, § 1832. In view of this fact, it seems clear that sections 1149 and 1150 were only intended to apply to those municipal corporations, such as cities or villages, which were governed by common councils or boards of trustees. If these two acts are thus construed as independent measures relating to different subjects, the one to boards of education, and the other to the bonded indebtedness of cities and villages, they are consistent in their several provisions, and neither act limits or controls the other. If the board of education is subject to the limitation found in section 1149, that computations for the purpose of issuing bonds must be based on the assessment "for the year next preceding the time" when they are issued, then we perceive no reason why it may not with equal reason be claimed that it was subject to other limitations found in the same section, in which event it was entitled to issue bonds to the extent of 5 per cent. of the assessed valuation for the year 1889, instead of 3 per cent., or, in other words, to issue bonds to the amount of $78,750, since section 1149 was amended by an act approved on February 27, 1890, by raising the limit from 4 per cent. of the assessed valuation to 5 per cent. Vide Sess. Laws S. D. 1890, c. 59. In this aspect of the case the result would be that the plaintiffs below were clearly entitled to recover. They were innocent purchasers of the bonds for value. The bonds showed on their face that the total issue was less than $78,750, and, not having actual knowledge of any other or greater indebtedness, the plaintiffs were entitled to rely on the recital, which each bond contained, "that the total amount of this issue of bonds, together with all other outstanding indebtedness of said board of education, does not exceed the statutory or constitutional limitation." Board Com'rs Gunnison Co. v. E. H. Rollins & Sons (recently decided by the supreme court of the United States) 173 U. S. 255, 19 Sup. Ct. 390; Id., 49 U. S. App. 399, 411, 412, 26 C. C. A. 91, and 80 Fed. 692; Chaffee Co. v. Potter, 142 U. S. 355, 12 Sup. Ct. 216. Without pursuing the subject at greater length, it is sufficient to say that we are satisfied that the judgments below were for the right party, and they are therefore affirmed.