Kelly v. Cole.

*Instruction after argument— waiver by defendant.*

---

H. B. KELLY *et al.* v. GEORGE E. COLE,
*as Auditor, etc.*

**No. 12,666.   (65 Pac. 672.)**

SYLLABUS BY THE COURT.

1. MUNICIPAL BONDS—*Refunding Act of 1901 Construed.*   Section 1, chapter 288, Laws of 1901 (Gen. Stat. 1901, § 517), construed, and held to limit the power conferred upon the municipalities therein named, in the issuing of refunding bonds, to the amount of the bonded indebtedness of such municipality actually existing at the time the act of refunding occurs.

2. ——— *Matured Interest Coupons may be Included.*   Matured interest coupons, evidencing earned interest, attached to a municipal bond, inhere in and form a part of the bond itself, and are comprehended in the term "bonded indebtedness actually ex-

25—63 KAN.

isting," and may be computed in ascertaining the amount of refunding bonds which may be issued under the provisions of said act.

**3.** ———— *Unearned Interest Coupons should not be Included.* Unearned interest coupons, attached to municipal bonds, are not "bonded indebtedness actually existing," within the legislative meaning and intent as expressed in said act, and may not be included in the amount for which refunding bonds may be issued under the power therein conferred.

Original proceeding in mandamus. Opinion filed July 6, 1901. Division one. Judgment for defendant.

### STATEMENT.

THIS is a proceeding in mandamus to compel the respondent, as auditor of state, to register 200 refunding bonds, of the denomination of $500 each, executed by the county of Chase, in pursuance of an agreement with relators to compromise and refund $80,000 of railroad bonds issued by that county November 1, 1892, in aid of the Chicago, Kansas & Western Railroad Company. The right of relators to demand the registration of these bonds is based upon section 3, chapter 163, Laws of 1891 (Gen. Stat. 1901, § 520), as amendatory of section 4, chapter 50, Laws of 1879, which, in so far as it relates to this controversy, reads as follows:

"The proper officers shall, at the time of issuing refunding bonds, make out and transfer to the auditor of state a certified statement of all proceedings had by the proper board or city council, as shown of record, and that the said bonds have been issued for value in all respects in conformity to this act, for certain indebtedness surrendered, distinctly describing the bonds issued and the indebtedness surrendered, and that they have been duly registered by the attesting clerk and the county clerk, as required herein; which statement shall be in such form and include such other information as the auditor of state may require,

and be signed by all the officers whose signatures are
attached to such bonds, and attested by the proper
clerk with the corporate seal of the county, city,
township, school district, or board of education, if
any, and be duly acknowledged before the county
clerk. And the auditor shall, upon being satisfied
that such bonds have been issued according to the
provisions of this act, and that the signatures thereto
of the officers signing the same are genuine, register
the same in his office in a book kept for that purpose,
and shall, under his seal of office, certify upon such
bonds the fact that they have been registered in his
office according to law."

The facts are agreed upon, and are substantially as
follows : On the 16th day of November, 1886, the elect-
ors of Chase county conferred upon its board of com-
missioners authority to subscribe for $80,000 of the
capital stock of the Chicago, Kansas & Western Rail-
road Company, and to issue in exchange therefor
eighty bonds of the county in the denomination of
$1000 each, due and payable thirty years from the
date thereof, bearing interest at the rate of six per
cent. per annum, payable semiannually, to aid in the
construction of a line of railway through said county.
On November 19, 1886, in pursuance of the authority
so conferred by the electors, a subscription to the capi-
tal stock of said railway company was made, and
thereafter the company constructed its line of railway
through said county in compliance with the terms and
conditions agreed upon. The county, however, re-
fused to comply with the terms of its agreement until
compelled so to do by order of this court, made on the
12th day of October, 1892. In pursuance of the order
of this court so made, and on the 1st day of Novem-
ber, 1892, the county issued and delivered its eighty
bonds in the denomination of $1000 each, payable to
bearer, on the 1st day of November, 1922, bearing in-

terest at the rate of six per cent. per annum, payable semiannually, as evidenced by sixty interest coupons thereto attached.   All the interest earned on said bonds to May 1, 1901, has been promptly paid by the county.

These aid bonds the board of county commissioners of the county now seek to refund.   In furtherance of this object, the county, through its board of commissioners, on the 27th day of April, 1901, entered into a contract constituting relators the financial agents of the county for the purpose of consummating the refunding of said bonds.   This contract provided, in substance, that the county would execute and place in the office of the treasurer of state its 200 refunding bonds in the denomination of $500 each, dated May 1, 1901, bearing interest at the rate of four per cent. per annum, payable semiannually, each of said bonds absolutely due and payable on the 1st day of May, 1926, with the option in the county to pay off and redeem from one to ten of such bonds, in the numerical order of their issue, at any interest payment, beginning May 1, 1906 ; the bonds so executed to be delivered to the order of relators upon the surrender for cancellation of the railroad-aid bonds ; that for each block of $4000 of said bonds surrendered for cancelation relators should receive $5000 of the refunding bonds so executed, until the exchange of the whole issue should be made ; the relators, however, expressly agreeing to surrender only so many of the original bonds under this contract as they might be able to control.

In compliance with this contract, the county board executed the refunding bonds in controversy, containing therein, as the basis of statutory power to issue the same, the following recital :

"This bond is one of two hundred bonds of $500 each, numbered from one to two hundred, inclusive,

amounting in the aggregate to $100,000, issued for the purpose of refunding legal outstanding bonded indebtedness of said Chase county, and which does not exceed in amount the actual amount of outstanding indebtedness of said Chase county, and in pursuance of chapter 70, Laws of 1879, as amended by chapter 163, Laws of 1891, entitled 'An act to amend chapter 50 of the Laws of 1879, entitled "An act to enable counties, municipal corporations, the boards of education of any city and school districts to refund their indebtedness,"' as amended by chapter 113, Laws of 1893, entitled 'An act to amend section two (2) of chapter one hundred and sixty-three (163) of the Laws of 1891, entitled "An act to refund indebtedness,"' as amended by an act of the legislature of 1901, entitled 'An act to amend section one (1), chapter one hundred and sixty-three (163), of the Session Laws of 1891, entitled "An act to refund indebtedness."'"

The bonds so executed, together with a certified copy of the proceedings of the county board, were presented to the defendant and demand made that the same be registered in his office in compliance with the provision of the statute above quoted. This demand was refused; hence this proceeding.

*Overmyer, Mulvane & Gault,* and *Waggener, Horton & Orr,* for plaintiffs.

*A. A. Godard,* attorney-general, and *J. S. West,* for defendant.

The opinion of the court was delivered by

POLLOCK, J.: This controversy arises over the construction of section 1, chapter 288, Laws of 1901 (Gen. Stat. 1901, § 517), recited in the bonds. This section reads:

"That section 1 of chapter 163 of the Laws of 1891 be and is hereby amended so as to read as follows:

SECTION 1. Every county, every city of the first, second or third class, the board of education of any city, every township and every school district is hereby authorized and empowered to compromise and refund its bonded indebtedness, including coupons and judgments thereon, upon such terms as can be agreed upon, and to issue new bonds with semiannual interest coupons attached in payment for any sums so compromised, which bonds shall be sold at not less than par, shall not be for a longer period than thirty years, shall not exceed in amount the actual amount of outstanding indebtedness, inclusive of attached coupons, and shall not draw a greater interest than six per cent. per annum. No indebtedness of any kind shall be funded or refunded under the provisions of this act except bonded indebtedness actually existing at the time of the passage of this act or hereafter legally created; and nothing herein contained shall be construed to validate or invalidate any existing bonded indebtedness.''

It is strenuously insisted by counsel for relators that this act confers power upon the municipalities therein named to refund their outstanding bonded indebtedness by the issuance of new bonds, in conformity with the provisions of this act and in compliance with the provisions of the other acts of which this act is amendatory, aggregating, in face value, the entire amount of bonded debt of the municipality, inclusive of interest coupons thereto attached, whether earned or unearned; and that in the present case, as Chase county is refunding $80,000, face value, of the aid bonds, which have thereto attached unmatured interest coupons aggregating $103,200, or a total debt of $183,200, by the issuance of $100,000, face value, of the refunding bonds, the aid bonds are actually being refunded at their present worth, and the transaction is clearly within the power conferred upon the county by the act quoted.

On the other hand, it is contended by counsel for respondent that the act in question, construed in connection with the several acts recited in the bonds, confers power to compromise and refund actually outstanding bonded indebtedness, including matured interest coupons and judgments thereon only, and that the unearned or unmatured interest coupons attached to the aid bonds are not actually outstanding bonded indebtedness within the terms of the act, and may not, therefore, be refunded under the power conferred; that, as it is admitted that $20,000 of the bonds sought to be registered represent unearned interest coupons, and not indebtedness of the county, the issue in such amount exceeds the power conferred on the county, and that the desire of the county or its agents so to magnify and multiply the bonded debt of the county must be denied.

An examination of the title and provisions of the original act of 1879 (ch. 50), and a comparison of this act with the several acts amendatory thereof subsequently passed, prior to the act in question, leave it entirely free from doubt that only actually outstanding bonded indebtedness may be refunded under the power here conferred; that heretofore the policy of the lawmaking power, as expressed in the amendment of 1891 (ch. 163), has been greatly to restrict and safeguard the large measure of power conferred by the original act.   For example, under the original act, "matured and maturing indebtedness of every kind and description whatsoever" might be refunded, whereas the amendment of 1891 limited the scope of the power to refund to "bonded indebtedness, including matured coupons and judgments thereon."

Again, the original act made no requirement as to registration of the refunding bonds in the office of the

auditor of state. This safeguard to prevent abuse of the power the act of 1891 incorporated in the law. By the original act, no restriction was placed on the amount of bonds which a municipality might issue. By the act of 1891, the power of counties and townships to issue bonds, except in refunding outstanding bonded indebtedness, was restricted to five per cent. of the assessed valuation of the municipality, as shown by the last determination of the board of equalization, and of cities (except cities of the first class) and school districts to six per cent.

Viewed in the light of this former restrictive legislation on this subject, we are justified in holding that the power conferred by the apparently conflicting provisions of the act under consideration is limited to and controlled by the prohibition that "no indebtedness of any kind shall be funded or refunded under the provisions of this act except bonded indebtedness actually existing at the time of the passage of this act or hereafter legally created." As interest earned upon a principal bond, represented by past-due coupons, from its very nature inheres in and forms a part of the bond itself, by force of necessity such interest becomes a part of the "bonded indebtedness actually existing." But as to the unearned interest represented by coupons attached to the aid bonds sought to be refunded in this case, the holder of the principal bond has not the present right to demand or to receive the same. It is only by his forbearance of the use of the principal sum, evidenced by the face of the bond he holds, for a given period of time in future, that the amount expressed in such coupons becomes the demandable property of the holder or the *actual bonded indebtedness* of the county.

This is not only the natural and reasonable defini-

tion of the term "bonded indebtedness," but it is also the rule adopted by all courts in estimating the amount of indebtedness that may be lawfully incurred under constitutional and statutory limitations upon the power of municipal corporations to incur indebtedness.   The face value of the obligations and the accrued interest thereon are alone considered as the debt.   Interest to become due thereon in the future is not reckoned indebtedness.   (*Carroll County v. Smith,* 111 U. S. 556, 4 Sup. Ct. 539, 28 L. Ed. 517 ; *Lake County v. Graham,* 130 id. 674, 9 Sup. Ct. 654, 32 L. Ed. 1065 ; *Chaffee County v. Potter,* 142 id. 355, 12 Sup. Ct. 216, 35 L. Ed. 1040 ; *Sutliff v. Lake County Commissioners,* 147 id. 230, 13 Sup. Ct. 318, 37 L. Ed. 145 ; *German Ins. Co. v. City of Manning,* 95 Fed. 597.)   This is also the view taken by the officers of the county, as they certify to the respondent that "the bonded indebtedness of said county at this date is $80,000," not $183,200.

The construction we have placed upon the act under consideration seems not only in harmony with the policy and intent of the legislature, as ascertained from prior amendments to the original act, but in direct accord with the positive inhibition contained in the act itself.   It is also important to consider the fact that while the original act and amendments thereto recited in the bonds as affording lawful power for their existence have many times been resorted to for the purpose of *,changing the form* of the municipal indebtedness of the bodies corporate therein named, it has not heretofore been contemplated that any authority or power resided therein *absolutely to create additional bonded indebtedness* of such municipalities, but rather, that the power to *create* bonded indebtedness, as contradistinguished from the power to *change the form* of

indebtedness, rests in the people, and a vote of the electors is necessary to call such power into operation.

Should the construction contended for by counsel for relators be adopted, the very bonds now sought to be registered may, at the expiration of two years from their date, notwithstanding the option of payment therein contained, be refunded by the issuance of other bonds, aggregating in face value the entire amount of principal and unearned coupons thereto attached. Such power, so liable to abuse, of such vital importance to the taxpayers of the municipality, if intended, must be conferred in such clear, positive and unmistakable terms as to leave no room for construction by the courts.

It follows that the writ must be denied.

DOSTER, C. J., JOHNSTON, GREENE, JJ., concurring.