## O'Rear *v.* Sartain, *et al.*

*Bill to Enjoin Letting of Contract for Bridges.*

(Decided June 30, 1915. 69 South. 554.)

1. *Counties; Indebtedness; Limitation.*—Section 215, Constitution 1901, confers no right to levy taxes to pay an indebtedness incurred in excess of the limitation fixed by Section 224 of the Constitution.

2. *Same; Become Indebted.*—The expression "become indebted" as used in Section 224 contemplates that in calculating the amount of the county's indebtedness, the face value of the county's obligation and accrued interest thereon must be included, but not interest not yet due.

3. *Same.*—Under the provisions of Section 224, Constitution 1901, road bonds not issued cannot be counted as a present indebtedness.

4. *Same.*—In determining whether a county has exceeded its debt limitation, the validity of the contemplated issue of bonds depends on the condition of the indebtedness at the time of issuance, and not upon its condition at the time of the election authorizing the bond.

5. *Injunction; Grounds; Apprehension.*—An injunction should not be granted upon the mere apprehension of the complainant that some illegal act would be done.

6. *Same; Controlling Discretion; County officers.*—Equity has no jurisdiction to control the discretion of county commissioners in the conduct of the county's business.

APPEAL from Walker Law and Equity Court.

Heard before Hon. T. L. SOWELL.

Bill by Martin O'Rear against C. M. Sartain and others constituting the Commissioner's Court of Walker County, to enjoin them from letting contracts for the construction of certain bridges. From a decree dissolving the injunction, complainant appeals. Affirmed.

ERNEST LACY, for appellant.

DAVIS & FITE, and GRAY & WIGGINS, for appellee.

THOMAS, J.—Appellant filed this bill, praying that appellees, as members of the court of county commissioners of Walker county, be enjoined from letting contracts for the construction of four steel bridges. A temporary injunction was granted on the filing of the bill. Appellees filed their answer under oath, and moved the dissolution of the injunction. On the hearing, submission was had upon the bill as amended, and affidavits supporting the same, together with the answer of the appellees and the affidavit of the judge of probate in support of the answer. From the decree dissolving the injunction the appeal is taken.

The bill as amended alleges that the last assessed value of the taxable property of Walker county, Ala., "for the tax year 1914, does not exceed the sum of $12,500,000;" "that the total outstanding indebtedness of the county amounts to $290,250, not including interest warrants;" that said interest warrants were on the courthouse debt, and amounted, at the time of the filing of the bill, to $100,477.50; that interest warrants outstanding on the bridge debt of the county amounted to the sum of $22,322.96. The inter-

[O'Rear v. Sartain, et al.]

est warrants are payable annually, and, as shown by the exhibits to the affidavit of the county treasurer, have not matured. It is further alleged that there remain unsold $150,000 of the authorized county road bonds, and that if said bonds are sold this year, as is contemplated by the court of county commissioners, the indebtedness of the county will be increased to the sum of $413,560.80, not including the interest debt of the county on said bridge warrants and road bonds. It is further alleged that by the act approved August 2, 1907, three-fifths of all special taxes, except special school taxes, collected for Walker county, Ala., belong to the public road fund of said county, and no part of same is authorized to be spent, except in constructing and maintaining the public roads of the county, except that $2,000 of such taxes may be annually used for repairs to public bridges, and the remaining three-fifths of said special taxes so collected each year have been set aside as a fund with which to meet the payments of the courthouse warrants, and that practically all of this two-fifths of said special taxes is required to pay courthouse warrants as they respectively mature; that after the payment of maturing courthouse warrants, and of demands for building and maintaining the public roads of the county there is, and will be, nothing left of this special tax fund with which to pay debts incurred for the construction of bridges already built or to be built; "that there is no fund out of the money collected by the county out of which payments can be made for bridges, except the general fund of the county; and that it requires all of the money paid into said general fund to meet the expenses of the county, outside of payments of the courthouse debt and money appropriated to the said road fund of the county."

The respondents aver "that the amount of the interest warrants referred to in the bill does not constitute an outstanding indebtedness against the county within the meaning of the constitutional limitation," and "that there remains unsold $150,000 of the county's road bonds"; but they deny that respondents "are making efforts at this time to sell such bonds, and allege that said amount is not an outstanding debt against Walker county." And respondents deny that the building of the proposed bridges entail an expense of $125,000 on the county, averring that, on the contrary, such bridges can be constructed at a cost of not exceeding $75,000. They further aver that the present indebtedness of the county is $262,805, and that, as under the Constitution and laws of Alabama the county is authorized to incur an indebtedness of approximately $437,-500, the indebtedness to be incurred by the construction of the proposed bridges will not increase the total indebtedness of the county to the constitutional maximum, but that the present indebtedness and said proposed indebtedness for bridges will not aggregate in excess of $350,000—a sum $187,500 less than said constitutional maximum. The respondents deny that "there will be nothing left of the special road and bridge and general funds of Walker county out of which to pay for the bridges mentioned in said bill, but allege that Walker county will be amply able to meet its present indebtedness and the additional indebtedness incurred by the building of said bridges."

A county's authority to "become indebted" is limited by section 224 of the Constitution. This provision, peculiar to the Constitution of 1901, is as follows: "No county shall become indebted in an amount including present indebtedness, greater than three and

one-half per centum of the assessed value of the property therein: Provided, this limitation shall not affect any existing indebtedness in excess of such three and one-half per centum, which has already been created or authorized by existing law to be created: Provided, that any county which has already incurred a debt exceeding three and one-half per centum of the assessed value of the property therein, shall be authorized to incur an indebtedness of one and a half per centum of the assessed value of such property in addition to the debt already existing. Nothing herein contained shall prevent any county from issuing bonds, or other obligations, to fund or refund any indebtedness now existing or authorized by existing laws to be created."

To properly understand section 224, it must be construed in connection with 215, which provides that: "No county in this state shall be authorized to levy a greater rate of taxation in any one year on the value of the taxable property therein than one-half of one per centum: Provided, that to pay debts existing on the 6th day of December, 1875, an additional rate of one-fourth of one per centum may be levied and collected, which shall be appropriated exclusively to the payment of such debts and the interest thereon: Provided, further that to pay any debt or liability now existing against any county, incurred for the erection, construction, or maintenance of the necessary public buildings or bridges, or that may hereafter be created for the erection of necessary public buildings, bridges, or roads, (a) any county may levy and collect one-fourth of one per centum, as may have been or may hereafter be authorized by law, which taxes so levied and collected shall be applied exclusively to the purposes for which the same were so levied and collected."

(1)   On counties having "become indebted in an amount, including indebtedness, greater than three and one-half per centum of the assessed value of the property therein," section 215 can confer no right to levy taxes to pay an indebtedness incurred in excess of the limitation placed by section 224. To determine whether a county would "become indebted" in an amount exceeding the constitutional limitation, add the aggregate amount of the proposed contract to the county's present indebtedness, and if the sum of the contract for the proposed improvement and the total present indebtedness of the county is beyond the constitutional limitation, the annual tax is denied, to the extent of the excess.—*Hagan v. Commissioners of Limestone County,* 160 Ala. 544, 562, 49 South. 417, 37 L. R. A. (N. S.) 1027; *Gay-Padgett Hardware Co. v. Brown,* 188 Ala. 423, 66 South. 161.

(2)   The question to be determined is: The meaning of the words "become indebted," as used in section 224 of the Constitution. Is it principal and *accrued interest,* or is it principal and *all interest;* that is, interest accrued and to accrue between the date of incurring the debt and the date the principal is to mature? Constitutions are the result of popular will, and their words are understood ordinarily as used in the sense that such words convey to the popular mind. 6 Am. & Eng. Ency. Law (2d Ed.) 924, 925. The words "become indebted" were used in section 224 of the Constitution in the ordinary and popular sense, and a natural and common-sense construction must be given them.

The case of *Gunter v. Hackworth, et al.,* 182 Ala. 205, 62 South. 101, is cited as authority for the proposition that the word "debt" is to be so defined as to embrace

unmatured interest. The use, in the opinion, of the words, "The prohibition against indebtedness is generally construed to apply to indebtedness in all forms, however incurred, or for whatever purpose," however, did not decide this question. The decision in the Gunter-Hackworth Case turned on the question whether certain warrants that were issued for the rebuilding of the courthouse exceeded the constitutional limitation. The precise question before us was presented in *Hagan v. Commissioners of Limestone County, supra.* The bill sets out an itemized statement of the proposed increased indebtedness against which injunction was sought as:

"Total principal, $59,000.00; interest, $15,989.00; grand total, $74,989.00."

Mr. Justice Denson, for the court said: "We are also of the opinion, and so hold, that the amount to be considered, in determining whether the debt exceeds the limitation, is the aggregate amount of the contract. —*Culbertson v. City of Fulton,* 127 Ill. 30 (18 N. E. 781) ; *Beard v. Hopkinsville,* 95 Ky. 239 (24 S. W. 872, 23 L. R. A. 402, 44 Am. St. Rep. 222) ; *Salem Water Co. v. Salem,* 5 Or. 30; *Prince v. City of Quincy,* 128 Ill. (21 N. E. 768) ; *Earles v. Wells,* 94 Wis. (N. W. 964, 59 Am. St. Rep. 886). Adding the $59,000, which the contract provides shall be paid for the courthouse to the present indebtedness, carries the total indebtedness of the county greatly beyond the constitutional limitations." 160 Ala. 544, 563, 49 South. 417, 37 L. R. A. (N. S.) 1027.

On page 558 of 160 Ala., on page 421 of 49 South., in *Hagan's Case,* the distinction is made between the principal debt and the interest. Interest is defined as a premium for the use of money, usually reckoned as

a percentage, and necessarily invokes the idea of a continuing liability as its foundation. There can be debt without interest, but no interest without a debt. Interest is regarded as incidental to the debt. Principal is always debt; interest is an accessory to the principal. The principal is the fixed sum; the accessory is a constantly accruing one. The former is the basis or substance from which the latter arises, and on which it rests.—*Howe v. Brandley,* 19 Me. 36; *Doe v. Warren,* 7 Greenl. (Me) 48; *Du Belloix v. Lord Waterpark,* 1 D. & R. 16; *Brewster v. Wakefield,* 1 Minn. 352, 355 (Gil. 260), 69 Am. Dec. 343.

In *Gay-Padgett Hardware Co. v. Brown, supra,* it was held that, though a county has reached its constitutional debt limit, it is nevertheless bound to pay its ordinary current obligations, and may, for this purpose, anticipate revenues actually assessed and payable for the year in which the obligations incurred. The court said of the words "indebted" and "indebtedness": "It is clear that, if they are to be understood in their broadest signification, the effect of section 224 would be, only to inhibit further indebtedness when the prescribed limit is reached, but also to practically forestall all municipal action; for certainly neither a county nor a city government could proceed for a single day * * * without incurring, for some period of time, debts or liabilities. * * * The Constitution could not, in reason and common sense, have intended any such result."

This question in another form was practically passed upon by our court, Chief Justice Stone writing the opinion, in *Gibbons v. Mobile & Great Northern Railroad Co.,* 36 Ala. 410. It was there contended by the appellant that in making the contract the city author-

ities had transcended the power conferred upon them, in this: That whereas the statute only authorized them to aid in the construction of the railroad by the issue of city bonds, in the amount not exceeding $1,000,000, yet they had in fact issued bonds and coupons amounting to over $2,000,000. Judge Stone replied that: "This argument is more specious than solid. The bonds are for the precise sum of $1,000,000; nor more, no less. These bonds mature at various times from 1 to 25 years. The excess over $1,000,000 consists in obligations, in the shape of coupons, to pay the interest on the said $1,000,000, until such time or times as the principal of the bonds shall be paid. This, we think, is in strict conformity with the spirit of the statute, which evidently contemplated that the bonds should be interest-bearing, and therefore marketable. Anything less would not have furnished $1,000,000 of aid to the railroad." 36 Ala. 439.

Similiar questions have arisen in other states, under Constitutions and legislative enactments, and the courts in construing such provisions, have announced conclusions similiar to that we have reached. In *Durant v. Iowa Co.,* 1 Woolworth, 69, Fed. Cas. No. 4,189, Justice Miller said that the real debt incurred by the county is the principal sum named in the bonds. The coupons attached to the bonds are promises to pay the annual installments of interest. Their form, and the fact that they may be detached from the principal obligation, does not change their character. They do not form part of the debt, any more than would a provision for interest yet to accrue, incorporated in the body of the bond.

"If the defendant's counsel were correct in his position, the bonds when issued were legal, because it is

[O'Rear v. Sartain, et al.]

not pretended that the amount secured by them exceeded the 5 per centum of the value of the taxable property in the county; but by lapse of time, as the interest has become due and remained unpaid, they and their incidents, the coupons, have become illegal. The absurdity is manifest." 8 Fed. Cas. No. 4189.

In *Finlayson v. Vaughn*, 54 Minn. 331, 56 N. W. 49, it was held that, in determining the amount of indebtedness that may be incurred within the 5 per cent. of the assessment, the par value of the bonds to be issued is alone considered, and not the interest which may subsequently grow thereon by the terms thereof. Mr. Justice Pollock declared in *Kelly v. Cole*, 63 Kan. 385, 65 Pac. 672, that the unearned interest coupons attached to municipal bonds, are not "bonded indebtedness actually existing," within the legislative meaning, and intent as expressed in said act, and may not be included in the amount for which refunding bonds may be issued. In *City of Ashland v. Culbertson*, 103 Ky. 161, 44 S. W. 441, the court declared that, under the constitutional limitation of the indebtedness that cities and towns were authorized to contract: "The term 'indebtedness,' as used in the Constitution, was not interest * * * to include future interest. The lawmakers were not looking at the incident of the indebtedness, but to the indebtedness proper."

So the Supreme Court of Wisconsin and Illinois have held, in *Herman v. City of Oconto*, 110, Wis. 660, 86 N. W. 681; *Crogster v. Bayfield Co.*, 90 Wis. 1, 74 N. W. 635, 77 N. W. 167; *Rice v. Milwaukee*, 100 Wis. 516, 76 N. W. 241; *Stone v. City of Chicago*, 207 Ill. 492, 510, 69 N. E. 970, and *Blanchard v. Village of Brenton*, 109 Ill. App. 578.

In *Epping v. Columbus*, 117 Ga. 263, 43 S. E. 803, this question was exhaustively reviewed and many au-

thorities collected, and it was there stated: "Taking
the word (debt) in the popular sense, it means the
amount of the present liability on a given date. The
amount of one's indebtedness today is the principal
sum which may be legally collected from him at a fu-
ture time, plus any interest on the same which may
have accrued up to today. Within the meaning of the
Constitution, the debt of a city at the time of the adopt-
ion of that instrument was an amount represented by
the principal and the past-due interest at that time."
—*Carlson v. City of Helena*, 39 Mont. 82, 102 Pac. 39,
17 Ann. Cases, 1233.

This is the construction placed on many constitution-
al and statutory limitations on the power of municipal
corporations to contract debts considered in Mod. L.
of Mun. Soc. (by Hainer)  § 61: Simmonton's Mun.
Bonds, § 37 p. 65; 1 Dillon on Mun. Corp. (5th Ed.)
397. Mr. Dillon thus concisely states the rule: "Ac-
crued interest must be included in computing the
amount of the existing indebtedness, but not the unearn-
ed interest, although the obligation may not be pay-
able for a long time."

The Supreme Court of the United States has several
times discussed the rule, adopted by the state courts,
that, in estimating the amount of indebtedness that
may be lawfully incurred under constitutional and stat-
utory limitations upon the power of the municipal cor-
poration to contract debts, there is to be considered
only the face value of the obligations and the accrued
interest thereon, interest to become due in the future
not to be reckoned an indebtedness.—*Lake County v.
Graham*, 130 U. S. 674, 9 Sup. Ct. 654, 32 L. Ed. 1065;
*Chaffee v. Potter*, 142 U. S. 355, 12 Sup. Ct. 216, 35 L.
Ed. 1040; *Sutliff v. Lake County*, 147 U. S. 230, 13 Sup.

Ct. 318, 37 L. Ed. 145; *Dixon County v. Field*, 111 U. S. 83, 93, 4 Sup. Ct. 315, 28 L. Ed. 360; *German Ins. Co. v. City of Manning* (C. C.) 95 Fed. 597.

If there is an excess of authority, it affects the validity of the bonds or warrants so issued, pro tanto. Bonds are invalid only when issued after the limit is reached; that a portion will not legalize that which is in excess of it.—*McPherson v. Foster Bros.*, 43 Iowa 48, 22 Am. Rep. 215; *Sultro v. Pettit*, 74 Cal. 332, 16 Pac. 7, 5 Am. St. Rep. 442. Nor is the portion within the limit invalidated by the fact that another portion of it is in excess of the limit and illegal.—*State v. Crete*, 32 Neb. 568, 49 N. W. 272; *Turner v. Com'rs of Woodson Co.*, 27 Kan. 314; *McPherson v. Foster Bros.*, supra.

The resonable construction of section 224, as to "interest" not accrued, is that all obligations of this character, no matter how evidenced, were by the framers of the Constitution intended to be disregarded in estimating indebtedness under limitations of the debt-contracting power. The limitation here dealt with is based on a per centum of the assessed value of the property in the county, and this value is subject to change from year to year.—*Butts County v. Jackson Co.*, 129 Ga. 801, 60 S. E. 149, 15 L. R. A. (N. S.) 567, 121 Am. St. Rep. 244. It cannot be said that the framers of the Constitution intended the item of interest on long bond issues, or that of unaccrued interest on unmatured warrants issued in payment of authorized county improvements, should be counted a part of the present indebtedness of the county. In many instances this annual interest is distributed through many years, and, in the aggregate, would approach the amount of the cost of the principal improvements. For the same period, the

percentage of "the assessed value of the property" in the county is subject to change yielding additional credit or reducing the basis of credit; and the fact that the county has entered into a special contract to pay this interest, or evidenced the same by separate warrants maturing yearly, does not change the fact that these warrants are for interest on a county indebtedness.

If, however, interest on the county's obligations has matured and remains unpaid, this becomes a "present indebtedness," and must be estimated, in ascertaining the county's right to incur additional indebtedness under the limitation of section 224.—*Rurant v. Iowa Co.* 18 Fed. Cas. No. 4,189; *Kelly v. Cole,* 63 Kan. 393, 65 Pac. 672, and authorities there collected; 1 Dillon Muni-. Corp. (5th Ed.) p. 396, § 205; *Stone v. City of Chicago,* 207 Ill. 492, 510, 69 N. E. 970; *Epping v. Columbus,* 117 Ga. 271, 43 S. E. 803. The unmatured interest warrants are not part of the "present indebtedness" of the county, and the proposed bridge contracts, aggregating $75,000, would not cause the county of Walker to become indebted in an amount, including present indebtedness, greater than 3½ per centum of the assessed value of the property therein.

(3) The commissioner's court not having issued the road bonds, the authorized issue of $150,000 of these bonds cannot be counted a present indebtedness of the county, within the meaning of section 224 of the Constitution.

(4) It is evident that the validity of the issue of county bonds must depend upon the condition of the county indebtedness at the time of the issuance, and not upon its condition at the time of the election authorizing the issue.—*Corning v. Board of Com'rs,* 102 Fed. 57, 42 C.C. A. 154; *Board v. Sutliff,* 97 Fed. 270,

281, 38 C. C. A. 167; *Thompson-Houston Electric Co. v. City of Newton* (C. C. ) 42 Fed. 723, 728; *Board of Ed. of City of Huron v. Nat. Life Ins. Co.,* 94 Fed. 324, 328, 36 C. C. A. 278; *Rathbone v. Board, etc.,* 83 Fed. 125, 27 C. C. A. 477; *Dudley v. Board,* 80 Fed. 672, 26 C. C. A. 82; *Goodson v. Dean et al.,* 173 Ala. 301, 55 South. 1010. In *Redding v. Esplen Borough,* 207 Pa. 248, 56 Atl. 431, bonds having been authorized, but not issued, the borough thereafter entered into contract for the construction of a sewer, and when the issue of the bonds was sought the amount of the bond issue and of the sewer contract exceeded the constitutional limit. It was held that the validity of the bond issue was dependent on the county debt, not of the date of the election, but of the time of the issue,.

(5) An injunction should not be issued upon the mere apprehension of the complainant that some illegal act will be done.—*Alston v. Dunn et al.,* 176 Ala. 421, 58 South. 300; *Goodson v. Dean et al., supra;* 1 High on Inj. (2d. Ed. § 591, p. 391; 1 Joyce on Inj. § 17, p. 35; *Troy v. Com'rs of Doniphan Co.,* 32 Kan. 507, 510, 4 Pac. 1009.

(6) A court of equity, at the suit of a taxpayer, may restrain by injunction the misappropriation of county funds by county officials; but no power exists in a court of equity to compel county commissioners in the exercise of their discretion in the conduct of the county's business. When a court of equity undertakes to review the action of the boards of revenue or courts of county commissioners, a question of jurisdiction is presented; and unless the jurisdictional facts are alleged, and the charge thereon is made of fraud, corruption, or unfair dealing, jurisdiction of the subject-matter is not acquired. The bill in this cause falls short of such ju-

risdictional averment. The Walker county law and equity court could not review the finding of the court of county commissioners, on the necessity for the bridges, or on the sufficiency of the plans and specifications therefor.—*Board of Revenue, Covington Co., v. Merrill, infra,* 68 South 971; *Long et al. v. Shepherd,* 159 Ala. 598, 48 South. 675; *Matkin v. Marengo County,* 137 Ala. 155, 34 South. 171; *Hays v. Aldrichs,* 115 Ala. 649, 39 South. 167.

The decree of the Walker law and equity court, sitting in equity, dissolving the injunction, is affirmed.

Affirmed. ·

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.