No. 37,156

THE STATE OF KANSAS, *ex rel.* EDWARD F. ARN, Attorney General, etc., *Plaintiff*, v. J. R. "RAY" WOODRUFF, Trustee, Board of Trustees, Shawnee Township, Wyandotte County, *Defendant*.

(189 P. 2d 899)

Opinion filed February 16, 1948.

*John J. Ziegelmeyer,* of Kansas City, argued the cause, and *Edward F. Arn,* attorney general, and *H. R. Fatzer,* assistant attorney general, were with him on the briefs for the plaintiff.

*Joseph H. McDowell,* of Kansas City, argued the cause, and *Harry Miller, Jr.,* of Kansas City, was with him on the briefs for the defendant.

The opinion of the court was delivered by

THIELE, J.: This is an original proceeding in mandamus to compel a township trustee to join in the execution of certain waterworks revenue bonds, to be issued and sold under the provisions of G. S. 1945 Supp., chapter 80, article 16.

In a preliminary way it is noted that in the original act providing for township water systems (Laws 1933, chapter 125 [Special Session] appearing as G. S. 1935, chapter 80, article 16) the phrases "township board" and "board of township trustees" both appear, although it seems clear only one board is referred to, and that is the board composed of the following township officers, the trustee, the treasurer and the clerk. The confusion in terms was continued and expanded in amendments made to the original act, resulting in the statute first referred to. It is also reflected in the proceedings now before us. To avoid it hereafter, we shall refer to the board, however denominated, as the township board.

Plaintiff's motion for the writ contains lengthy quotations from the township board's minutes, and has attached to it a number of exhibits. The whole will be summarized. As all of the bonds mentioned are waterwork revenue bonds, they will be referred to simply as bonds.

In his motion for the writ, plaintiff after stating his official capacity and setting forth the persons composing the township board, and that defendant Woodruff is township trustee, alleges that on October 15, 1947, pursuant to a duly published notice of public hearing as required by G. S. 1945 Supp. 80-1606, the township board considered a resolution for the issuance of bonds in the **amount of**

$455,000 of which $295,000 was to be used to refund an equal amount of outstanding bonds and $160,000 was to be used to pay for extensions to the waterworks system of the township. That meeting was adjourned to October 20, 1947, at which time Woodruff offered an amendment that only $160,000 of bonds be issued for extensions and improvements and a separate system be created to operate the extensions and the bonds retired from the earnings therefrom. Parenthetically it may be said that under G. S. 1945 Supp. 80-1602 either method proposed could have been followed. No one seconded Woodruff's proposal and on vote the original resolution was adopted, Woodruff voting in the negative. Immediately thereafter a proposed written offer concerning the issuance, sale and delivery of the new bonds, to which reference is later made, was considered. On motion, the offer was accepted and the officers of the township authorized and directed to execute the proposed contract, Woodruff voting in the negative. The minutes of the meeting disclose that thereafter Woodruff was asked if he would execute the bonds when presented for his signature and if he would furnish his signature for lithographing the bonds in order to facilitate an early start on the actual work of extending and improving the system and he answered "no" to both propositions. At a later meeting on October 27, 1947, Woodruff was again asked if he would carry out his official duty and sign the bonds and responded he would not. There being no controversy as to the form of the bonds, or the terms thereof, and as to other matters set forth under the petition, no further reference is made thereto. The prayer of the motion was for a writ of mandamus against Woodruff, commanding him to sign the bonds. An alternative writ was issued commanding Woodruff to sign the bonds and to provide his signature so that bonds might be printed and prepared for issuance in accordance with the provisions of G. S. 1935, 10-105, or to show cause why he should not be required to do so.

Woodruff filed his answer, raising certain issues of fact which were eliminated by an amended answer later filed by him. Construed together, his answer and amended answer state that he is the township trustee; that the township is presently operating a waterworks system and has outstanding bonds in the amount of $295,000; that demand has arisen for extension of the waterworks system and defendant as trustee is anxious to extend the system where feasible in the most economical method; that the resolution adopted provided,

in addition to bonds of $160,000 for extensions, for $295,000 to refund outstanding bonds; that on October 20, 1947, the other two members of the township board entered into an agreement with two named bond dealers whereby the dealers agreed to purchase the entire $455,000 of bonds and the board agreed, in order to assist in obtaining the outstanding bonds, to pay the dealers one percent of the new issue of approximately $455,000, and that defendant believes such an agreement is in violation of G. S. 1945 Supp. 80-1602; that the agreement also provides for an arbitrary increase of hydrant rental, and to do so at the request of the bond dealers is contrary to G. S. 1945 Supp. 80-1605. Defendant also answers that Laws 1947, chapter 483, empowers the board to refund bonds callable by their terms and limits the interest rate to three percent, and that $180,000 of the outstanding bonds are callable at various dates after August 1, 1949, and it would be to the best interest of the township to refund the bonds at three percent and to refund the bonds at this time at a higher rate (3¾%) would not be to the best interest of the township. Defendant also answers that the bonds have never been printed or presented to him for his signature.

As submitted to the court, no issue of fact is presented. The record discloses that prior to October 3, 1947, the township had outstanding an issue of waterworks revenue bonds of $295,000, and under the statute the revenue from the sales of water from the system then in existence is to be used solely to retire those bonds. It was desired to extend the system. Generally speaking, the statute (G. S. 1945 Supp. 80-1602) permitted one of two plans to be followed. Additional bonds could be issued and sold and extensions created, the revenues from which must be used to retire the bonds, or a new issue of bonds could be issued and sold sufficient in amount to take up the outstanding bonds and to cover the cost of the extensions and improvements. If the latter method was to be used the statute provided:

"That no additional revenue bonds shall be issued and sold . . . unless the township board, *the holder or holders of all such outstanding revenue bonds consenting,* shall take up and pay for or make an exchange for such outstanding issue of revenue bonds at a price of not to exceed the par value thereof plus interest accrued on such bonds at the coupon rate from the interest payment date preceding the date of payment of the purchase price to the date of payment of the purchase price. Additional revenue bonds . . . shall be in an amount necessary to take up and pay for the issue of outstanding revenue bonds, . . . plus an amount necessary to finance or aid in financing

the cost of additional construction, reconstruction, repairing or improving the water system as in the judgment of said township board will be necessary or convenient." (Italics inserted.)

Proceeding under G. S. 1945 Supp. 80-1606 the township board gave notice of a public hearing on the proposed resolution, and as set forth in the motion for the writ, held the hearing and adopted the resolution. There is no contention that statutory requirements as to procedure were not followed nor that there is any defect in the preliminary notice, in the resolution adopted, or in the form of the bonds therein provided, and so we look to defendant's reasons why what was done was either not legally sufficient, or wherein statutory authority was exceeded, as justifying his refusal to act.

Defendent contends that this proceeding is prematurely brought. He concedes that it is well settled that mandamus will lie to compel an officer to perform a ministerial duty as distinguished from a discretionary one (*State, ex rel., v. McCombs*, 125 Kan. 92, 262 Pac. 579), and directs attention to the portion of the statute that additional bonds may be issued and sold only when "the holders of all such outstanding bonds consenting," and argues there is nothing in the record that such holders of outstanding bonds have consented, and that he will be violating the law if he signs the bonds before the consents have been obtained. Defendant further argues that mandamus will not lie to compel a prospective or future act (citing 34 Am. Jur. p. 868 and 35 Am. Jur. p. 64), that the bonds have not been printed or presented to him or to the board for signature and that until his version of statutory requirements is met, a cause of action to compel him to sign does not exist, and that his refusal at the township meeting is not sufficient to support the action.

As to the type of bonds under consideration, the statute provides, "That no additional revenue bonds shall be *issued and sold*" (italics inserted) unless the holders of outstanding bonds consent (G. S. 1945 Supp. 80-1602, after first *"Provided, however"*). The word "issue" in connection with warrants and bonds has a definite meaning.

In *State v. Pierce*, 52 Kan. 521, 35 Pac. 19, it was said:

"To issue county warrants or orders means 'to send out, to deliver, or to put into circulation.'" (Syl. ¶ 4.)

In *Steinbruck v. Milford Township*, 100 Kan. 93, 163 Pac. 647, it was held:

"Municipal bonds are not issued until they are sent out, delivered, or put into circulation." (Syl. ¶ 1.)

In *State, ex rel., v. School Board,* 110 Kan. 779, 782, 204 Pac. 742, may be found the following:

"In the act of 1917, this language is used: 'nor issue any bonds or other evidence of indebtedness.' In the act of 1921: 'and shall not issue any bonds or other evidence of indebtedness.' It is but giving a common and natural effect to the language used to say that the other evidence of indebtedness means such as has been issued and distinct from such indebtedness as may have been merely incurred or created. Webster's New International Dictionary defines 'issue' a transitive verb, 'To cause to issue; to send or let out; to emit; discharge. To deliver, or give out, as for use; as, to issue provisions . . . To send out officially; . . . to put into circulation; . . .' In *The State v. Pierce,* 52 Kan. 521, 35 Pac. 19, it was held that to issue a county warrant or order means to send out, deliver or put into circulation. It was there said:

"'A county warrant or order is "issued" when made out and placed in the hands of a person authorized to receive it, or is actually delivered or taken away. (p. 528.)'

"In *Steinbruck v. Milford Township,* 100 Kan. 93, 163 Pac. 647, it was held that municipal bonds are not issued until they are sent out, delivered and put into circulation."

We have no hesitancy in holding that consents are not required to be in hand when the bonds are authorized, but are required to be in hand when the new bonds provided for by the resolution are sent out, delivered and put into circulation. Defendant's contention that he may not be compelled to execute the bonds because the consents were not in hand when the resolution authorizing new bonds was adopted, and that the proceeding against him is therefore premature cannot be sustained.

Insofar as his claim of prematurity is based on the fact the bonds are not yet printed and have not been presented to him for signing, we note first his conclusion that his statement to his fellow board members he would not furnish his signature nor sign the bonds is not sufficient. As reflected by the minutes, at two different meetings he refused without any more qualification than that he was in favor of following the other plan authorized by the statute. G. S. 1935, 10-105, provides that township bonds "shall be signed by the trustee, attested by the township clerk, and countersigned by the township treasurer," and that interest coupons shall be signed by "the township trustee . . . *Provided,* The interest coupons attached to any bond may be signed with a facsimile of the signature of any officer required to sign such interest coupons." The resolution authorizing the bonds provides for a total issue of $455,000 in 455

bonds of $1,000 each, that bonds varying in total from $7,000 to $25,000 should be retired serially over a period of thirty years; that each bond should bear coupons for interest payable semiannually, and that the interest coupons should be executed with facsimile signatures of the township trustee and the township clerk. That resolution placed a ministerial duty on the defendant to furnish his signature so that his facsimile signature could be printed on the bonds, and at least so far as that feature is concerned was for present and not future performance. Defendant's contention that whether he personally signed the interest coupons or a facsimile of his signature was to be used, is discretionary and not subect to mandamus cannot be sustained. The township board had the right to choose which method was to be used. The board made the choice and the defendant trustee cannot alter it.

It is quite apparent from the number of the bonds, the differences therein occasioned by their retirement serially and therefore the number of interest coupons to be attached, the privilege of calling some of the bonds for payment on varying dates, on which we have not dwelt, that some time must be consumed in getting the bonds ready for execution, and that they cannot be printed until defendant furnishes his signature so that a facsimile signature may be placed on the interest coupons needs no elaboration. Although defendant is asked to perform what may be called two different acts, they are part of one whole—to get the bonds ready for issue and sale. An order presently made that defendant furnish his signature so that a facsimile may be prepared for the interest coupons and that he sign the bonds as soon as they can be prepared cannot properly be denominated as premature nor as compelling performance of a prospective act.

Under a general heading that the proposed bond issue contravenes the laws of Kansas, the defendant raises certain questions hereafter noted, all pertaining to the contract of October 20, 1947, with the bond dealers, to which reference has previously been made. This contract consists of a written offer by the bond dealers to purchase the bonds, the offer being accepted by the township board. In the offer the bond dealers agreed to buy and the board agreed to sell the entire issue of $455,000 at par, subject to conditions set forth. Among other things the offer stated it was to be understood the issuance of the new bonds depends upon the bond dealers being able to present to the board for cancellation all of

the outstanding bonds, $295,000, and the bond dealers agree to use their best efforts to obtain the outstanding bonds to present them to the board for cancellation; that if the outstanding bonds are presented they will represent the purchase price for a like amount of the new bonds; and that the additional bonds of $160,000 will be delivered against payment at par. The bond dealers also agreed to have the bonds printed at their expense. In view of the contentions made the important provisions are that if the refunding is completed and the new bonds are issued, the board agrees to pay the dealers one percent of $455,000 to reimburse the dealers for part of the expenses incurred by them in the refunding, and a further agreement that the board will provide for "an increase of the present fire hydrant rental up to two mills."

Defendant cities authority to the effect that he is justified in refusing to execute the bonds where the proposed issue would contravene the constitution and laws (34 Am. Jur. p. 938) and directs attention to G. S. 1935, 10-117, that any person who shall issue any refunding bond in excess of the indebtedness refunded shall be guilty of a misdemeanor, and to G. S. 1945 Supp. 10-432 that refunding bonds shall not be issued in an amount exceeding the indebtedness refunded, as well as to G. S. 1945 Supp. 80-1602 that the additional bonds issued shall be in an amount 'necessary to take up and pay for the issue of outstanding bonds, or to make an exchange, plus an amount necessary to finance or aid in financing the cost of additional construction. In support of the general proposition advanced he cites *Kelly v. Cole,* 63 Kan. 385, 65 Pac. 672, construing a refunding statute, Laws 1901, chapter 288, section 1, and decisions from other jurisdictions. It may be conceded that under our statutes refunding bonds cannot exceed in amount the bonds to be refunded. Defendant argues that the contract results in a violation of law; that the township board may issue bonds not in excess of the indebtedness to be refunded, here $295,000, plus sufficient bonds to finance the extension, here $160,000, and, as we understand, to pay out any part of the proceeds to the bond dealers results in a diversion of some of the proceeds and the net result is not merely to change the form of the indebtedness but to increase it. The inference is left that the outstanding bonds may be properly retired in the amount of $295,000 but that a part of the proceeds of the remaining $160,000 for extensions will be paid to the bond dealers, leaving that much less for improvements, with the result that

the issue will exceed the cost of the improvement. Defendant also argues that the agreement of the board with the bond dealers to increase hydrant rental levy, without a hearing, and before the extensions are completed, is contrary to G. S. 1945 Supp. 80-1605, is arbitrary, permits the bond dealers to set the levy, and is unlawful.

The contentions thus advanced may be answered shortly. First, at this time it is not certain the contract will ever come into effect so that any payment will be made to the bond dealers. Second, under the contract, there is no provision that any moneys to be paid the bond dealers will be any part of the proceeds of the bonds—insofar as that is concerned it is rather clear that the new bonds will take up the outstanding bonds, dollar for dollar. If there is any payment out of bond moneys, the payment will be made from the $160,000 of new bonds. The statute provides that the new or additional bonds may be for an amount necessary to finance or aid in financing the cost of additional construction or improvement as in the judgment of the township board will be necessary (G. S. 1945 Supp. 80-1602). What may be necessary is a question addressed to the entire board, and a conclusion reached by the majority of its members is the judgment of the board (G. S. 1935, 77-201, *Fourth*). Because two members of the board were not in agreement with the third member, did not make the judgment of the majority as to how the bond matter should be conducted, arbitrary, capricious or unlawful. Third, we must assume that the township board will act in a lawful manner and will perform the contract only in a lawful manner. Fourth, if there should be any abuse of power by the township board, especially in connection with a hydrant rental levy, it is the duty of the state or one of its officers charged with the responsibility of scrutinizing the acts of public officers and boards, to challenge the abuse and under many of our decisions it has been held that in an action to prevent such abuse of power the only proper plaintiff is the state or one of its officers of the class mentioned. (See cases listed in *Robertson v. Kansas City*, 143 Kan. 726, 731, 56 P. 2d 1032.)

Defendant presents no argument on the contention advanced in his answer that the township board should defer its action on the presently outstanding bonds which he alleges are callable after August 1, 1949, and then take advantage of Laws 1947, chapter 483, perhaps for the reason that on mature reflection he has concluded that the whole matter is one in which the township board could exercise its discretion, and that it had done so.

348

The court concludes that defendant has not shown cause why he should not obey the alternative writ of mandamus, and it is ordered that a peremptory writ issue that he furnish his signature so that a facsimile may be prepared in order that the bonds may be printed, and that he execute and sign the bonds when they are presented to him for that purpose.