No. 39,073

SHAWNEE TOWNSHIP, WYANDOTTE COUNTY, KANSAS, *Plaintiff*, v. GEORGE ROBB, Auditor of the State of Kansas, *Defendant.*

(254 P. 2d 274)

Opinion filed March 7, 1953.

*Conrad Miller* and *Harry Miller, Jr.,* both of Kansas City, were on the briefs for the plaintiff.

*Harold R. Fatzer,* attorney general, and *William P. Timmerman,* assistant attorney general, were on the briefs for the defendant.

The opinion of the court was delivered by

THIELE, J.: This is an original action in mandamus to compel the auditor of the State of Kansas to register certain waterworks revenue bonds issued under the provisions of G. S. 1949, chapter 80, article 16. The auditor's answer discloses no dispute of fact. No question is raised as to the regularity of the proceedings had by the township board, the question for decision being solely whether the bonds tendered for registration are legal and valid under the above statutes, which are hereafter referred to only by chapter and section number.

For present purposes it is noted that under 80-1601, certain townships, of which petitioner is one, having a publicly-owned water system are authorized to contract for constructing water mains. Under 80-1602 the township board may issue revenue bonds to finance the cost of "constructing, reconstructing, repairing or improving such water system and such bonds shall be made a specific lien upon

such water system so constructed, reconstructed, repaired or improved and the revenues derived therefrom" and provided that the board of any township which shall have issued such bonds is authorized to issue additional revenue bonds and to pledge for their payment "the revenues of such water system, together with the additional revenues of said water system as so constructed, reconstructed, repaired or improved," and provided further that no additional revenue bonds shall be issued and sold if there is an issue of bonds outstanding unless the holders thereof consent in the manner specified in the statute. It is further provided that the board may issue revenue bonds to finance the cost of "extending" the water sytsem which shall constitute "a specific and prior lien upon such extension to such system and the revenues derived therefrom, . . ." Under 80-1606 the township board is authorized and required to make provision for the payment of bonds issued "by fixing rates, fees or charges for the use of or services rendered . . . sufficient to pay the cost of operation, maintenance, repair and improvement of such utility" and to pay the principal of and interest upon all of the revenue bonds of the township when and as the same become due: *Provided, however,* "That no part of the proceeds of the revenue bonds so issued and sold, *nor of the income of said water system or the extension thereof,* constructed or purchased from the proceeds of said issue of revenue bonds, shall be used or expended for the purpose of *extending* said water mains beyond the system or extension as included in the plans and estimates upon which said bonds were issued." A later sentence of the section provides that the resolution authorizing the issuance of any revenue bonds "may contain such other covenants, agreements and restrictions as may be deemed necessary or advisable by the board . . . in order to insure the payment of any revenue bonds authorized and issued . . .

The factual situation disclosed by the pleadings is summarized: Prior to November 1, 1947, the township board had caused to be issued and sold, and there were then outstanding revenue bonds in the amount of $295,000. On the last date the board adopted a resolution, hereafter referred to as the 1947 resolution, providing for the calling of those outstanding bonds and for the issuance of revenue bonds in the amount of $455,000 to pay the outstanding bonds and to proceed with the construction of extensions referred to in plans, specifications and estimates prepared, filed, adopted and approved by the board; that the bonds authorized to be issued were

a first and specific lien upon the waterworks system of the township "including all extensions and improvements thereto and the revenue derived therefrom," that a separate water fund would be created for the purpose of handling the revenues and expenses of the system "and all of the revenues of said waterworks system, including all extensions and improvements thereto" should be paid into the fund so long as any of the bonds remained outstanding, not commingled with other funds, nor expended for general expenses, and that the bonds should constitute a first lien on the fund and, in general, that the board would not mortgage, pledge or incumber the system or any part thereof until the principal and interest of the bonds had been paid in full, and that no additional bonds should be issued to become a lien on the system or any extensions or improvements or the revenues therefrom unless the board should, pursuant to law, take up and pay or make an exchange of said bonds. The bond form specified in the resolution stated that the principal and interest of the bonds were made a first and specific lien upon the waterworks system of the township "including the extensions thereto to be constructed as aforesaid." We pause here to note that a controversy about the issuance of these bonds was disposed of in *State, ex rel., v. Woodruff*, 164 Kan. 339, 189 P. 2d 899, where some of the history of the bonds issued is set forth. After the issuance of the last mentioned bonds, there was an increase in population and an increased development in the township, and requests for water service by persons not served, and on July 28, 1952, the township board adopted a resolution, hereafter referred to as the 1952 resolution, authorizing the construction of Water Line Extension Revenue Bonds in the sum of $360,000, for the purpose of *constructing an extension* of the water system in accordance with plans, specifications and estimates of cost theretofore prepared, filed, adopted and approved by the township board, and providing for a fund to be known as "Water Operating Fund for the 1952 Extension to the Shawnee Township Water System" and that all of the revenues of said 1952 extension including all extensions and improvements should be paid into the fund so long as any of the bonds remain outstanding, should not be commingled with other funds nor expended for general expense, and that the bonds should constitute a first lien upon the above designated fund subject only to the deduction and payment of the reasonable and proper operation and maintenance expense of the 1952 extension.

The pleadings need not be noticed at length. Plaintiff alleges the facts above set forth; that it had fulfilled statutory requirements but that the auditor of the state had refused to register the bonds on the ground they had not been legally issued in that such bonds could not be issued without first refunding the previously issued water revenue bonds. The auditor's answer pleads in substance that the bonds issued under the 1947 resolution were a first and specific lien upon the water system *including all extensions and improvements thereto;* that the revenue from the system *including all extensions and improvements thereto,* shall be paid into the designated fund; that no additional bonds shall be issued to become a lien upon the system or *any extensions or improvements thereto* or the revenue therefrom unless the board refund or exchange the bonds pursuant to statute, and after pleading the 1952 resolution, pleads further that the bonds issued under it violate the covenants and agreements of the 1947 resolution, authorizing the issuance of the $455,000 bonds; that the bonds issued under the 1952 resolution are invalid, illegal and void and for the reasons stated the auditor rightfully refused to register them.

Unless the auditor's contentions are sustained, the bonds should be registered and we therefore consider his contentions as set forth in his brief.

In his brief the auditor sets forth three reasons why he believes the bonds are not eligible for registration. These will be taken up and answered in the order presented. He first contends that the covenants and agreements in the 1952 resolution authorizing the bonds presented for registration, violate the covenants and agreements contained in the 1947 resolution and the bonds issued thereunder, and our attention is directed particularly to the fact that the 1947 resolution made the bonds issued under it a first and specific lien upon the waterworks system "including all extensions and improvements thereto and the revenues derived therefrom" and that all revenues be paid into a fund to retire the bonds so long as any of the bonds were outstanding; that the bonds were outstanding, were not being refunded as permitted by statute, and that the covenants and agreements on which they were based were violated by the 1952 resolution, which provides for extension to the waterworks system and for another and different fund for the revenue derived from the extensions and that the bonds issued shall constitute a first lien on that fund. Stated another way, the auditor contends that

the 1947 resolution covered not only the funds from the waterworks system as it then existed with the extensions made as a result of that issue of bonds, but all extensions that might be made thereafter until the 1947 bonds are paid or refunded, and that the township board is without power to issue lawful bonds as provided by the 1952 resolution and make them a first lien on the revenue from the extensions which would be made with the proceeds of the bonds.

In our opinion, and as urged by the township board, the contention is not warranted by the statute. As has been noted, the township board issued bonds in 1947 to take up some outstanding bonds and to provide funds for making extensions according to plans and specifications then on file and approved. Under 80-1602 the township board was authorized to issue bonds to take up and pay for the issue of outstanding revenue bonds or to make an exchange therefor, plus an amount necessary to finance the cost of "additional construction, reconstruction, repairing or improving the water system. . . ." Under 80-1606 the township board was authorized and required to fix rates, fees and charges for water service sufficient to pay the cost of operation, maintenance, repair and improvement of the system and to pay the principal and interest on the bonds, provided, as more fully set forth in the statute, that none of the revenue "shall be used or expended for the purpose of extending said water mains beyond the system or extension as included in the plans and estimates upon which said bonds were issued.'

As applied here, it seems clear that the legislature intended that when bonds were issued in 1947 for statutory purposes as above quoted, the revenues from the system as existing or as it was to exist when the plans and estimates were completed, were what was to be devoted to operation, maintenance, repair and improvement of the system and then to payment and principal of the bonds, and that having prohibited the use of revenue for extensions, as above noted, it had no thought that if extensions were later built under other authority in the statute, that the revenue from the extensions, not then even in contemplation, could or would be pledged for the payment of the 1947 bonds. The 1952 bonds are authorized under the resolution adopted under that part of 80-1602 which provides the township board may issue revenue bonds to finance the cost of *extending* the water system and to constitute a first and prior lien upon the *extension* to the system and the revenues de-

rived therefrom. The factual picture is that the township board issued its 1947 bonds on its system as then constructed and as then additionally constructed, and the revenues therefrom are devoted to the statutory purposes and to retirement of the principal and interest on those bonds, and that in 1952 without disturbing the situation as to the 1947 bonds, the township board, under appropriate proceedings, issued its 1952 bonds to make *extensions* and pledged the revenue from the extensions to statutory purposes and to the retirement of the principal and interest of the 1952 bonds. In our opinion the statute authorized such procedure.

We note the auditor's contention that the township board was authorized by 80-1606 to adopt a resolution authorizing issuance of revenue bonds which "may contain such other covenants, agreements and restrictions as may be deemed necessary . . . to insure the payment of any revenue bonds . . ." and that the pledging of the future revenue from extensions not then in being nor in contemplation was proper. We think such a construction would be farfetched. Such other covenants, agreements and restrictions would have to be consonant with the statutory provisions and not contrary to them. It has been demonstrated above there is no authority to pledge revenue from service not in being, and that the statute provides that when the system is extended by proceeds of revenue bonds the revenues from the extended portion must be devoted to a specific purpose. Certainly the township board could not have intended, and we do not think it did, to make covenants, agreements or restrictions contrary to express provisions of the statute.

And finally the auditor contends that the 1947 resolution and the bonds then issued constitute a contract, and that the 1952 resolution and the bonds under it impair that contract in violation of article I, section 10, of the United States Constitution, and that the latter resolution operates to deprive persons of their property without due process of law under the Fourteenth Amendment to the United States Constitution. What has been said heretofore dispenses with the contention that the 1952 resolution impinges upon the 1947 one. Without discussion we hold that the 1952 resolution impairs no contract evidenced by the 1947 resolution and that no person is deprived of any property without due process of law by reason thereof.

In its brief the township has presented other matters which we deem it unnecessary to discuss.

Upon the whole record we conclude the auditor's asserted reasons for refusal to register the bonds are insufficient in law. His purpose in his refusal was to have the legal questions submitted, determined and that has been done.

The court will retain jurisdiction and if the bonds are not registered within ten days from the filing of this opinion a writ of mandamus will issue. The costs are taxed against the plaintiff (*Johnson County Comm'rs v. Robb*, 161 Kan. 683, 171 P. 2d 784).